### COUNTY OF WINDSOR,

##### AT THE

#### FEBRUARY TERM, 1861.

---

PRESENT:

Hon. LUKE P. POLAND, CHIEF JUDGE.
Hon. JOHN PIERPOINT,
Hon. JAMES BARRETT,
Hon. LOYAL C. KELLOGG,    } ASSISTANT JUDGES.
Hon. ASAHEL PECK,

---

THOMAS E. POWERS *v.* WILLIAM SKINNER.

*Illegal Contract.*

A contract for the performance of services as a lobby agent or for the exertion of one's personal influence and solicitations, to procure the passage of a public or private act of the legislature is void, as being prejudicial to sound

legislation and against public policy, and there can be no recovery for such services either on the special contract or a *quantum meruit*.

The defendant promised to pay the plaintiff a certain sum in consideration of his engagement to labor faithfully before the legislature for the charter of a bank; and the auditor found that the plaintiff under this contract was expected to and did solicit members of the legislature in behalf of such project, as he had opportunity. *Held*, that this was equivalent to an express finding that the contract contemplated the exercise by the plaintiff of his personal solicitation with members of the legislature in support of the application for the charter, and that the contract was therefore void.

BOOK ACCOUNT. The auditor reported that the defendant agreed to pay the plaintiff five hundred dollars, in consideration that the plaintiff agreed to labor faithfully before the legislature of 1853 for a charter of a bank at Royalton. The auditor further reported as follows :

"That at the session of 1853, bank charters were asked for at Northfield, Bradford, Waterbury, Jamaica, Springfield, and Royalton, that such applications had been advertised and were known to the parties, at the time of the plaintiff's employment; that early in the session, the respective friends and hired solicitors for the respective charters began to combine their forces, and consult upon the most feasible plan to accomplish a common purpose—to obtain special bank charters. The general banking law was deemed one great impediment, and they combined their forces, so far as practicable, to overcome that impediment, and this was done with the concurrence of the parties to this suit, and the agents and solicitors of the several charters. They consulted upon the policy of putting the strongest case forward, that it might clear the way for the weaker, and " draw after " it those of " less bottom and strength." The plaintiff advised to put Northfield forward ; and it was so done. The friends of the several charters, generally, labored and voted for the Northfield charter, under the expectation and agreement, that Northfield should stand by and help the others. The several applications prevailed. Without such " log-rolling " combinations doubtless many, or at least some, would have failed ; but the auditor knows of no instrument by which the exact merit of the Royalton application can be measured ; nor can he determine what would

have been its fate before that legislature had it stood alone, or upon its own merits.

The plaintiff was energetic, shrewd, laborious, and faithful. The auditor does not find that the plaintiff made any agreement to use improper means to obtain his ends, yet he was, doubtless, expected to appropriate to his use such agencies as were effecting other measures, and thus possess the aggregate strength of all ; for such things have long been in use in our legislature, and, at least, sanctioned by usage.

The fact that an unusual number of measures, of a local and private nature, before the legislature at that session, induced formidable organizations by pressure without and combination within, to effect the ends proposed, is perhaps the main reason why " log-rolling " was so rampant and mischievous, at that session. The auditor has no doubt that legislation often " suffers a detriment," and did at that session, from those outside agencies, which in common parlance are called log-rolling. When measures drag hard there is great temptation to resort to means more desperate, even downright corruption.

But the auditor does not think that the plaintiff should be affected by the acts of others, even of those who labored for the same end for which he contended, except so far as he sanctioned them. There was no proof that the plaintiff lent his aid to any measure that he did not believe to be right ; he favored honestly, no doubt, banks at Northfield and Bradford, and appropriated, so far as he could, the friends of them to subserve his own purpose—a bank at Royalton, and did this by a mutual understanding, among the friends of each, to render mutual aid. If this vitiates the contract, the plaintiff should be affected by it. If the plaintiff recovers upon the contract, he should recover five hundred dollars and interest from the first day of May, A. D. 1854.

If the plaintiff should recover, as of a *quantum meruit*, the auditor finds that the plaintiff paid out for board and rail road fare, etc., one hundred dollars. As to the value of his services, —if they are to be valued by the end attained, his charge in the opinion of the auditor, is extravagant.

If the " *quantum* " is determined by the plaintiff's capacity

to organize numbers into a unit, and to hold them steadily to one purpose, against opposition, and " against odds," his services are valuable. Without his services, it is quite probable no charter would have been obtained.

If he should recover what solicitors in such service, of leading talents, usually receive, the auditor thinks he should recover two hundred and eighty dollars and interest from January 1st, 1854.

The auditor finds that no contract was made that the plaintiff should use any specific means to effect his purpose, but was expected to and did solicit members of the legislature in behalf of his project, as he had opportunity.

The plaintiff was a doctor, and not a lawyer, and was employed by reason of his ability, and the facilities he possessed to influence the legislature ; and his former position in the House of Representatives, and familiarity with legislation and with members was one of these facilities.

It was known to some extent that the plaintiff was employed for the Royalton bank, and there was no proof that he used any stratagem or other means to conceal his relation, but, in his solicitations he did not generally declare or promulgate that he was hired or employed, but when asked he did not evade or conceal the fact."

On the foregoing report, the court 'at December term, 1857, REDFIELD, Ch. J., presiding, rendered judgment for the defendant, to which the plaintiff excepted.

*P. T. Washburn*, for the plaintiff.

A party may legally solicit from the legislature, in a proper manner, and obtain, by proper means, the enactment of a statute, in which he has, or deems that he may have, an interest, and may furnish all information, facts or statistics, pertinent to the matter. And what he may legally do by himself, he may legally employ an agent to do in his behalf. *Wood* v. *McCann*, 6 Dana 366 (4 U. S. Dig 67;) 2 Pars. on Cont. 260 ; *Hunt* v. *Test*, 8 Ala. 719. A legal contract may, therefore, be made, for services in soliciting and obtaining from the legislature the charter of a bank.

If the terms of a contract are ambiguous, or will admit of

more than one construction, the court will always give it that construction, which will uphold it as a legal and valid contract, rather than one which would render it illegal and invalid. *Richardson* v. *Mellish*, 2 Bing. 229, (9 E. C. L. 391.) *Harrington* v. *Kloprogge*, 2 Chit. 475, (18 E. C. L. 396.) *Porritt* v. *Baker*, 59 Eng. L. & Eq. 500. · *Goldham* v. *Edwards*, 36 Eng. L. & Eq. 319. 2 Pars. on Cont. 16.

The contract, in this case, is specifically stated by the auditor, to have been a promise by the defendant to pay the plaintiff five hundred dollars, " in consideration that the plaintiff engaged to *labor faithfully* before the legislature of 1853 for a charter of a bank at Royalton."

There was no element of illegality in the contract thus made. *Hunt* v. *Test*, 8 Ala. 719.

The compensation was not to be contingent upon success.

There was no agreement, that the plaintiff should exert personal influence in promoting the object.

There was no agreement, that the plaintiff's agency should be kept a secret from the legislators.

There was no agreement, that the measure should be procured by the formation of undue combinations.

In all these respects the case is unlike those in which contracts for lobby services have been held invalid,—as in *Marshall* v. *Balt. & Ohio R. R. Co.*, 16 How. 314, where, by the agreement, the compensation was to be contingent, and the agency kept secret,—and in *Clippenger* v. *Hepbaugh*, 5 Watts & Serg. 315, *Rose* v. *Truax*, 21 Barb. 361, and *Fuller* v. *Lame*, 18 Pick, 472, where the agreement was for the exercise of personal influence.

And it is unlike an agreement to withdraw opposition to the passage of an act by the legislature,—the English cases sustaining which are criticised in Redf. on Railways, 663, and contradicted by *Pingrey* v. *Washburn*, 1 Aik. 264. There is a broad distinction, both in morals and in law, between that contract, which has for its object the withholding and suppressing secretly from legislators information or facts, important for their consideration, and that contract, which has for its purpose the bringing of the same or similar facts to their notice.

And in the absence of any agreement for the use of unlawful

Powers *v.* Skinner.

means in procuring the charter, the fact, that the plaintiff did bring to his aid the friends of other measures, which he honestly advocated, cannot have an *ex post facto* relation, and render that illegal, which, in its inception and by its terms, was legal and proper. A contract cannot thus be avoided by matter subsequent. *Davis* v. *Bank of England*, 2 Bing. 393, (9 E. C. L. 444.) *Howden* v. *Simpson*, 10 Ad. & El. 793, (37 E. C. L. 249.) *Lampleigh* v. *Brathwaite*, Hob. 105.

The auditor finds, that the plaintiff "concurred" in the act of the friends of several charters to overcome the negative effect of the general banking law and put the strongest application forward; but he does not find, that he did any *act* in this respect, or was employed to do any. He finds, that the plaintiff lent his own aid to no other measure, which he did not deem to be right; and he does not find, that the aid, which was furnished by others, was of an improper character, or was improperly exercised.

There can be no inference drawn, which shall vary the contract of the plaintiff from the terms stated by the auditor. That would be an inference of fact, which the auditor has expressly negated, by the terms which he has used in stating the contract, and which, for that reason, the county court could not draw. The power of that court in this respect, extends to those cases, only, where the auditor has reported facts tending to a conclusion, but has not drawn any conclusion; but where the auditor has drawn the inference, or stated the fact, his finding is conclusive. *Stone* v. *Foster*, 16 Vt. 546. *Birchard* v. *Palmer*, 18 Vt. 203.

*Dudley C. Denison* and *Peck & Colby*, for the defendant.

This contract is *void*, being against public policy. *Marshall* v. *Balt. & Ohio R. R. Co.*, 16 How. 314, 336; 21 Curtis 153; *Pingrey* v. *Washburn*, 1 Aik. 264; *Clippenger* v. *Hepbaugh*, 5 Watts & Serg. 315; Redfield on Railways 663; *Noyes* v. *Day*, 14 Vt. 384.

2. It is true the auditor does not find that the plaintiff *made any agreement* to use improper means to obtain his ends. Yet he was expected to appropriate to his use such agencies as were effecting other measures, and thus possess the aggregate strength of all.

The auditor finds that the plaintiff appropriated the friends of the other banks, which he favored, to procure a bank at Royalton, and this by a mutual understanding among the friends of each to render mutual aid. That is, the plaintiff took upon himself the business of assisting to procure several charters, and sold out the friends of each to the friends of each other, and by this means *log-rolled* the several charters through the legislature successfully.

3. The auditor expressly finds that the plaintiff was expected to and did, solicit members of the legislature in behalf of his project, and was employed partly because of facilities he possessed, to influence the legislature, and his familiarity with legislation, and *with members*, was one of the facilities. It does not appear that he *solicited* votes of the members by prosecuting the merits of any one of the various applications, but " the friends of the several charters " generally, labored and voted for the Northfield charter, under the expectation and agreement that Northfield should stand by and help the others.

Northfield was only put forward because this plaintiff so advised, believing it to be the strongest case, and would " clear the way for the weaker." That is, the charters were not expected to prevail upon their own merits, but by the influence which this plaintiff could bring to bear upon the members, by personal application to them, and by combinations utterly subversive of all proper legislation.

KELLOGG, J. Courts of justice have, with jealous care, endeavored to protect every branch of the government from all illegitimate and sinister influences and agencies ; and it has been settled by a series of decisions, uniform in their reason, spirit, and tendency, that an agreement in respect to services as a lobby agent, or for the sale by an individual of his personal influence and solicitations, to procure the passage of a public or private law by the legislature, is void as being prejudicial to sound legislation, manifestly injurious to the interests of the state, and in express and unquestionable contravention of public policy. *Clippenger* v. *Hepbaugh,* 5 Watts & Serg. (Penn.) 315. *Wood* v. *McCann,* 6 Dana (Kentucky) 366. *Marshall* v. *Balt. &*

*Ohio R. R. Co.*, 16 Howard (U. S. Sup. Ct.) 314. *Harris* v. *Roof's Executors*, 10 Barb. (Sup. Ct.,) 489. *Rose et al.* v. *Truax*, 21 ib. 361. *Bryan* v. *Reynolds*, 5 Wisconsin 200. The principle of these decisions has no respect to the equities between the parties, but is controlled solely by the tendency of the contract ; and it matters not that nothing improper was done, or was expected to be done, under it. The law will not concede to any man however honest he may be, the privilege of making a contract which it would not recognize when made by designing and corrupt men. A person may, without doubt, be employed to conduct an application to the legislature as well as to conduct a suit at law, and may contract for, and receive, pay for his services in preparing and presenting a petition or other documents, in collecting evidence, in making a statement or exposition of facts, or in preparing and making an oral or written argument, provided all these are used, or designed to be used, either before the legislature itself, or some committee thereof, as a body ; but he cannot with propriety be employed to exert his personal influence, whether it be great or little, with individual members, or to labor privately in any form with them, out of the legislative halls, in favor of or against any act or subject of legislation. The personal and private nature of the services to be rendered is the point of illegality in this class of cases. *Sedgwick* v. *Stanton*, 14 New York, (4 Kernan) 289. Our government, in theory, is founded on the most exalted public virtue, and the principle which forbids the legal recognition of any contract for such services is so essential to the purity of the government, and is so firmly established as a rule of public policy, that it requires no vindication. It has not been questioned by counsel in argument, and no member of the court has had any doubt in respect to its propriety, or any hesitation in recognizing its authority. It is equally well settled that where a contract is an entire one, and contains an element which is legal, and one which is void as being against public policy, it cannot be sifted, so that the legal service rendered under it, or in its pursuit, can be separated from the illegal service, and a recovery had for so much of the service as would, if considered by itself, be adjudged to be legal. If any part of an indivisible promise, or any part of an

indivisible consideration for a promise, is illegal, the whole is void, and no action can be maintained on it. Chitty on Contracts, 536, c; *Fillson's trustee* v. *Himes*, 5 Penn. 452 ; *Rose et al.* v. *Truax*, *ubi supra*.

The plaintiff seeks to recover in this action for services rendered by him before the legislature of this state in the year 1853, in aid of an application for a charter for a bank at Royalton, under a contract or agreement made with him by the defendant ; and he relies upon the contract as the only ground for the defendant's liability. The important question in the case, therefore, is, whether the contract relied on to support the plaintiff's claim contained any illegal element or feature ; and this must be determined by the facts reported by the auditor in reference to the character of the services which the contract called for, as understood by the parties. On this point in the case, we have not had entire unanimity in our conclusions ; but our difference of opinion arose exclusively upon the interpretation of the auditor's report, and not upon any principle applicable to the facts stated by the auditor.

In the case of *Newman* v. *Cole*, 3 Esp. 253, it was held that assumpsit would not lie to recover back money deposited for the purpose of being paid to a person for his interest in soliciting a pardon for a person under sentence of death, and, on the case being opened, Lord ELDON, Ch. J., expressed a doubt whether the action was maintainable, " saying that he would hold the plaintiff to very strict proof of the means used to procure the pardon." The reason and spirit of this remark is, in our judgment, especially applicable to claims for services like those charged in the plaintiff's account. Such services should clearly appear to be legitimate, or they cannot be recognized as the basis of a legal claim. The auditor has found that the contract was a promise on the part of the defendant to pay the plaintiff five hundred dollars " in consideration that the plaintiff engaged to *labor faithfully* before the legislature of 1853 for a charter of a bank at Royalton." This statement of the contract, taken by itself, throws but very little light on the character of the services which the plaintiff expected or undertook to render, and is consistent with the claim that no illegal service was contemplated or stipu-

lated for by the contract ; but the auditor has also found that while no contract was made that the plaintiff should use any specific means to effect his purpose, " he was expected to, and did, solicit members of the legislature in behalf of his project as he had opportunity." A majority of the court are of opinion that this statement is equivalent to an express finding by the auditor that the contract, as understood by the parties, contemplated the use or exercise by the plaintiff of his personal solicitations and influence with individual members of the legislature in support of the application which he was employed to favor and promote ; and the other facts reported by the auditor, if they do not strengthen this conclusion, cannot be regarded as impairing it, or as furnishing any aid to the plaintiff's claim. The only services rendered by the plaintiff which are stated or described by the auditor in his report are clearly such as cannot be made the subject of a legal claim. The law lends no sanction or support to contracts for such services, but leaves the party who seeks the wages for his service to rely on the honorary obligation alone. It is not within the province of courts of justice to balance or adjust the equities growing out of such transactions. In this view of the contract under which the plaintiff's services were rendered, it is apparent that it contained an illegal element, and was, for that reason, wholly void. As the plaintiff's claim rests upon no other ground for support, there can be no recovery upon it.

Judgment of the county court in favor of the defendant, upon the auditor's report, affirmed.

BARRETT, J., dissenting. As I am unable, after having heard this case three times argued, to concur with the majority of the court, in the conclusion to which they have come, I deem it due to myself, and to the case, briefly to state my views.

The argument on both sides, and the decision have proceeded upon the ground, that the rights and liabilities of the parties arise from, and stand upon, the contract that was made between them for the services to be rendered by the plaintiff, in behalf of procuring the charter of a bank at Royalton. There is no difference of view between counsel, or between the members of the

court, as to the, principles and rules of law, which govern the subject of this kind of contracts.

What the contract was, in this case, was submitted to the finding of an auditor ; and it is to the contract, as a majority of the court understand that *he has found it*, that they have undertaken to apply the law, which rightfully governs, in pronouncing whether it be valid or void. If the contract, *which the auditor has found*, constituted or embraced an agreement for the doing of any thing illegal by the plaintiff, on account of being against public policy, or good morals, it should be declared void. If it was free from such view, then, *it is agreed that it should be upheld.*

The important inquiry is, what really has the auditor found the contract to be ?

This seems to be comprehensively and explicitly answered in the report ;—" A promise on the part of the defendant to pay the plaintiff five hundred dollars, in consideration that the plaintiff engage to labor faithfully before the legislature of 1853, for a charter of a bank at Royalton." In another part of the report, the auditor states, that " he does not find that the plaintiff made any agreement to use improper means to obtain his ends." The defendant does not assert any failure of performance, on the part of the plaintiff ; and the auditor finds, that the plaintiff was energetic, shrewd, laborious and faithful.

The defence has, in no degree, rested on the *manner* of the performance by the plaintiff ; nor has the decision of the court, as I understand it ; but exclusively on the *quality of the contract* made by the parties. This is the only tenable ground of defence.

In *Lord Howden* v. *Simpson*, 37 E. C. L. 249, Ch. J. TINDAL says " the quality of the agreement, whether fraudulent or not, must depend upon the intention of the parties to it at the time of making it ; and if there did not *then* exist the intention of deceiving the legislature by concealing from it, whilst the petitioners were asking for one set of favors, the purpose of afterwards asking for others, the agreement cannot be void, whatever imputation might rest on the conduct of the parties in making the subsequent concealment."

All agree that it is lawful for persons, interested in procuring some specific enactment, to procure and use the aid of others

before the legislature for that purpose. The contract, by which such aid is procured, becomes unlawful only when it embraces an agreement that the person employed is to use improper means to influence the action of the members of the legislature—such as personal solicitation, *log-rolling*, bribery, and the like. All agree that upon the contract, as it is above set forth, no illegality is apparent. When, therefore, that is followed in the report by the statement of the auditor, that " he does not find that the plaintiff made any agreement to use improper means to obtain his ends," elements of illegality, *as matters of fact*, as it seems to me, are conclusively excluded from the contract which the auditor has found to have been made by the parties, unless the court may exercise the prerogative of either disbelieving the auditor, or of passing over him, on matters of fact resting in evidence that is addressed to him alone.

It is true that the auditor has diffusely set forth many things that were done during that session of the legislature in reference to procuring charters of banks, in which the plaintiff participated ; and if the doing of those things had been stipulated for in the contract of employment, without doubt it would have tainted it with fatal illegality. But as they were all done subsequently to the making of the contract, they could at most have been *matters of evidence*, to be considered by the auditor in determining what was the contract. See *Lord Howden* v. *Simpson*, cited above, p. 249–50. He has also interspersed his statement of these things with many judicious moral hints and suggestions, in a manner that shows that such things would have full weight with him as evidence in their tendency to prove an illegal agreement between the parties. Yet, in view of all the things he has stated, as well things that had transpired under his own observation, and in relation to other matters, (of which he seems to have taken judicial cognizance,) as those shown by the evidence, and connected with the subject of procuring the charter in question, and influenced by the impression they would make upon such moral sensibilities as his report shows him to possess in this respect, he avows that "he does not find that the plaintiff made any agreement to use improper means to obtain his ends." In the face of that negation by the auditor, it is new doctrine to me that it is either the

duty or the right of the court to find that the plaintiff *did make an agreement to use improper means*—the fact upon which the whole ground and theory of the defence and the decision are made to rest. It is needless to repeat what has passed into the common maxims, that the express finding of a contract, or other matter of fact, precludes *all implications* in modification of such finding.

Great stress was laid in the argument by the defendant's counsel, and in the opinion that was read in announcing the decision, upon two expressions in the report, one following the language last above quoted, and constituting a kind of antithesis to that quotation, viz : " Yet he was doubtless expected to appropriate to his use such agencies as were effecting other measures, and thus possess the aggregate strength of all ; for such things have long been in use in our legislature, and at least sanctioned by usage." Two remarks are elicited in respect to this. First, it seems to me obvious from the structure of the expression that it was not designed to convey the idea, much less to state as a fact, that the plaintiff was so cognizant of such expectation, or so responded to it, at the time the contract was made, as to cause it to constitute a part of the contract. If such had been the design the expression would have been differently framed. Instead of saying " he was expected," it should have been, " it was expected that he would appropriate," &c., or " he expected to appropriate," &c., which forms of expression are capable of including the plaintiff as a party to such expectation, while that used by the auditor excludes him as a participant in the expectation. The expression used implies an expectation only on the part of others, and not on the part of the plaintiff himself.

Taken in connection with such structure of this expression, the preceding clause seems to me to be conclusive and absolute, in showing that the auditor did not design to convey any idea that such expectation entered into the contract. The other remark is, that the closing clause of the sentence indicates that he designed said expression only as one of his free comments, and not as the finding of any fact in qualification of the contract, as at first stated by him, and afterwards guarded by his negation of finding any agreement by the plaintiff to use improper means.

Powers *v.* Skinner.

His expression, " yet he was doubtless expected," &c., instead of being a conclusion of fact from the evidence adduced on the trial was obviously a remark suggested by the auditor's personal familiarity with the usages attendant upon legislation.

The other expression, on which stress is laid as above stated, is in the answer to the first request, the last clause, viz : " but (plaintiff) was expected to, and did solicit members of the legislature in behalf of his project as he had opportunity."

The remarks that I have made as to the former of said expressions are applicable in the main to this. The form of the expression is inconsistent with the idea that the auditor designed by it to state as a fact found by him that the plaintiff was a party to the expectation named. It is consistent only with the idea that he meant to represent such expectation as being entertained by others, and not concurrently by the plaintiff and defendant at the time of the making of the contract between them, in any such sense as to enter into and qualify the contract as at first stated in the report. If I am wrong in these views, I have only to confess that the language of the report effectually *conceals* instead of revealing to my mind and apprehension the idea and meaning of the auditor.

The auditor in this case fully understood his province and duty. He understood the essential elements of a contract, and the law of just implications, as well as of express terms, in determining what, *in point of fact*, was agreed between the parties. When he, therefore, stated explicitly what he found to be the contract, it was the contract as educed from all the evidence bearing on the subject, embracing as well what was actually expressed between the parties, as what was legitimately and fairly to be implied from all that transpired in relation to the subject matter of the contract ; *it was the statement of the terms to which the minds of the parties concurrently consented,* whether shown by direct proof of the language used by the parties, or inferred from the circumstances and incidents that made up the history of the entire enterprise from its first suggestion down to the final act. The undertaking of the defendant was to do a single act, viz : *to pay plaintiff five hundred dollars,* the consideration for which was that the *plaintiff engaged to labor faithfully before the*

Powers *v*. Skinner.

*legislature for a charter of a bank at Royalton.* I fail to find in the report any statement of any other or further consideration for the promise to pay the five hundred dollars, any engagement on the part of the plaintiff to do any thing but what is implied in laboring faithfully; and to preclude any inference or implication of any unlawful service to be rendered under the engagement, the auditor expressly negates finding any agreement to that effect.

I have always understood that in order to warrant the pronouncing of a contract void on account of its being tainted with immorality, such taint should be proved and found in the mode prescribed by the law, not guessed at and presumed. But I am compelled to s.y in this case that it seems to me such taint is assumed by the court to exist when the contrary is explicitly found by the auditor, to whom alone the evidence of facts is addressed, and who, by his express finding of the contract, both affirmatively as to terms and negatively as to the view asserted by the defendant, is fatal to its validity, has left to the court no vocation of inference or implication as to facts.

While I trust that I am not behind my brethren in my disapprobation of such practices as the auditor represents for securing success to measures before the legislature, nor in my readiness to apply the law in avoiding any contract that should embrace an agreement for the doing of such practices, I am unable to follow them in pronouncing a contract void which, as I understand the report, does not embrace " *any agreement to use improper means* " in behalf of the measure which the plaintiff was employed by the defendant to serve.

NOTE.—Judge BENNETT heard the first argument of this case, and has examined this dissenting opinion. He authorizes me to say that he concurs in the views therein expressed.