[No. 907.]

## H. A. GASTON, RESPONDENT, *v.* F. V. DRAKE, APPELLANT.

AGREEMENT TO DIVIDE THE FEES OF AN OFFICE VOID, AS AGAINST PUBLIC POLICY.—An agreement made before election to divide the salary, fees, and emoluments of the office of district attorney—the consideration for said agreement being that the plaintiff should use all his influence to secure the election of the defendant to said office, is void, as against public policy.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*Lindsay & Dickson*, for Appellant.

I. The contract between plaintiff and defendant is opposed to public policy, in contravention of the election law of this state, and wholly void.

The salary of an office of trust, or of an office concerning the administration of justice, are not the subject of sale; such sale is opposed to public policy and void at the common law. (*Wells* v. *Foster*, 8 M. & W. 148; *Palmer* v. *Bate*, 2 B & B. 673; E. C. L. R. vol. 6; *Flarity* v. *Odlum*, 3 T. R. 681; *Lidderdale* v. *Duke of Montrose*, 4 T. R. 248; *Aston* v. *Guinnell*, 3 Y. & J. 147; Story on Contracts, vol. 1, sec. 709; *Spense* v. *Harvey*, 22 Cal. 340; *Faurie* v. *Morin*, 6 Amer. Dec. 701; *Eddy* v. *Capron*, 4 Rh. Isl'd, 394.)

Such contracts tend to corrupt electors, poison the source of political power, and are therefore void. (*Martin* v. *Wade et al.*, 37 Cal. 168; *Nichols* v. *Mudget*, 32 W. 546; *Swayze* v. *Hull*, 3 Hal. 54.)

II.    A promise to use one's influence with the appointing power to secure the appointment of another to a public office in consideration of a portion of the salary and emoluments of the office, is a void contract. (*Lewis* v. *Knox*, 2 Bibb. 453; *Carlton* v. *Whicher*, 5 N. H. 196; *Meacham* v. *Dow*, 32 W. 721; *Gray* v. *Hook*, 4 N. Y. 449; *Ferris* v. *Adams*, 23 Vt. 136; *Haas* v. *Fenlon*, 8 Kan. 601; *Faurie* v. *Morin*, 6 Amer. Dec. 701.)

The courts should be vigilant in seeking to insure purity in elections, upon which the stability of the government itself depends. (*Mills* v. *Dolsen*, 40 N. Y. 543.)

It matters not how pure the intentions of the parties may be in entering into a contract of this kind, the answer to the inquiry, Is there anything pernicious in its tendency? must determine the question of its legality. (*Mills* v. *Dolsen, supra; Atcheson* v. *Mallon*, 43 N. Y. 147; *Tool Co.* v. *Norris*, 2 Wal. 45; 18 Pick. 472; 34 Vt. 281; 48 N. Y. 348; *Weed & Clark* v. *Black*, 3 Cent. L. J. 34.)

III.    Such contracts are in contravention of the election law of this state. (C. L. Nev., secs. 2591, 2592, 2593, 2594.)

IV.    The contract is entire. If part therefore of the consideration is illegal the whole contract is void. (2 Chitty Con. (Am. ed.), p. 973, and cases cited in note G.; 1 Pars. Con. (sixth ed.), p. 456 *et seq.*)

V.    In the absence of an agreement there would be no partnership in the office. (*King.* v. *Whiton*, 15 Wis. 684.)

*Lewis & Deal*, for Respondent.

I. The finding of fact relied upon by appellant was utterly unwarranted by the pleadings and issues and is therefore nugatory. Findings of fact should always be simply the conclusions arrived at by the court upon the issues of fact presented by the pleadings. (*Morenhout* v. *Barron*, 42 Cal. 605; *Gregory* v. *Nelson*, 41 Id. 284; *Burnett* v. *Stearns*, 33 Id. 474.)

II. If the fact that Gaston agreed to aid Drake in securing his election be a material fact, and rendered the agreement void, that fact should have been pleaded, If the contract independent of that element was valid, then defendant should have alleged the fact that such promise was a part of the contract, and that by reason thereof the entire contract was rendered void.

III. The evidence does not bring the case within the provisions of section 2592, section 2593, or 2594, of the compiled laws.

IV. These provisions of the statute are penal; the court must therefore construe them strictly. By the rules of construction of such statutes only such cases are held to be within them as come within the very letter of the law. (23 Iowa, 304; *Lair* v. *Killmer*, 1 Dutch, 522; Dwarris on Statutes, 634.) To hold that the contract entered into between these parties is void under the statute necessarily involves the conviction of the defendant of a very serious crime, when as a matter of fact no one can believe, after examining the evidence, that anything criminal or wrong was thought of by either party.

V. A contract for the division of fees is valid and must be upheld. (*Mott* v. *Robbins*, 1 Hill. 21; *Becker* v. *Ten Eyck*, 6 Paige, 68; 7 Bac. Abr. 301; 3 Minn. 413.)

*Lindsay & Dickson*, in Reply.

The respondent made no exception to the findings, did not move for a new trial, nor has he appealed, therefore he can not be heard to allege any error committed by the court below, nor to object to any finding, nor to the want of a finding. (*Jackson* v. *F. R. Water Co.*, 14 Cal. 18; *Seward*

v. *Malotte*, 15 Id. 304; *Paul* v. *Magee*, 18 Id. 698; *Poppe* v. *Athearn*, 42 Id. 606.)

By the Court, LEONARD, J. :

It is alleged in the complaint that plaintiff and defendant, on or about February 3, 1876, formed and entered into a copartnership to practice law in Storey county and state of Nevada; that by the terms of the contract of partnership, each was to share equally, share and share alike, in all the labors of practice, and in the fees and profits arising therefrom; that in the fall of 1876, by and with the advice and consent of plaintiff, defendant became a candidate for the office of district attorney of Storey county; that it was agreed between plaintiff and defendant that if defendant should be elected to said office, the said copartnership should continue upon the terms above stated, and that said partners should share equally, share and share alike, in the profits, fees, and emoluments of said office and business; that defendant was elected on the seventh day of November, 1876, and on the second day of January, 1877, he duly qualified and entered upon the discharge of the duties of said office; that from time to time thereafter plaintiff greatly assisted defendant in performing the duties of said office, upon the request of the latter, and upon his promise to divide the proceeds equally with plaintiff; that plaintiff has performed his every duty in said partnership and in said office, and has divided equally with defendant all fees and moneys which came into his hands belonging to said partnership; that during its existence, defendant received about the sum of thirteen thousand two hundred and twenty-five dollars and twenty-four cents as fees belonging to said partnership, in excess of his just share; that though often requested so to do, he has refused and failed to settle and account with plaintiff, or to pay to plaintiff any part of said proceeds of said partnership. Plaintiff prays for an accounting and settlement, and that defendant be required to pay over to him one half of the fees and profits of the partnership stated in the complaint, to wit, six thousand six hundred and twelve dollars and sixty-two cents. Defendant demurred to

the complaint generally and specifically, and the demurrers were overruled. In his answer he admits the contract of partnership first alleged, but denies specifically each and every material allegation of the complaint in relation to the alleged contract, or any contract or agreement concerning the office of district attorney, or any division of fees or profits thereof.

The court called a jury to decide this special issue, to wit: "Did the plaintiff and defendant enter into an agreement, or have an understanding, that they should divide equally the profits and emoluments of district attorney of Storey county?" Upon the issue submitted, the jury found for plaintiff. It is said by defendant that they so found in consequence of an instruction claimed to be erroneous; but as we view the case, that need not be considered. The court, in terms, adopted and confirmed the verdict, and an accounting was ordered and had between the parties. Among other facts, the court found the following: "That on or about September 1, 1876, after the defendant had become a candidate for the office of district attorney of Storey county, and before he was elected thereto, the plaintiff and defendant entered into an agreement to divide the salary, fees, and emoluments of said office; that the consideration for said agreement was that the plaintiff should use all his influence to secure the election of the defendant to said office, and in the event of the election of defendant to said office, to assist him in the performance of the duties of said office; that said partnership and agreement terminated on the fifth day of April, 1877; that about said date, plaintiff notified defendant that he was ready to assist in closing all business then pending; that upon full accounting there was in the hands of plaintiff, or had been collected by him, of the partnership assets, the sum of six hundred and ninety dollars, and by defendant, of partnership assets and salary and fees belonging to said office of district attorney, the sum of seven thousand one hundred and fifty-six dollars, of which six thousand seven hundred and five dollars were derived and collected from the salary and fees of said office; that there was then due from defendant to plaintiff the sum

of three thousand two hundred and thirty-three dollars, being one half of the balance in his hands, over and above what was collected by plaintiff." As a conclusion of law, the court found that plaintiff was entitled to judgment against defendant for the sum of three thousand two hundred and thirty-three dollars, together with his costs. Judgment was entered accordingly, and this appeal is taken from an order overruling defendant's motion for a new trial, and from the judgment.

It is proper to state that it appears from the complaint that the sum of thirteen thousand two hundred and twenty-five dollars and twenty-four cents, one-half of which was claimed as being due to plaintiff, was made up of fees appertaining to the district attorney's office. Of the six hundred and ninety dollars collected by plaintiff, it does not appear that any came from fees of that office; while from the court's findings, it appears there were four hundred and fifty-one dollars in defendant's hands that did not come from that source.

It is urged by counsel for defendant that the contract alleged to have been entered into between plaintiff and defendant, and that found by the court, were and are opposed to public policy, in contravention of the election law of the state, and wholly void.

It is claimed, on the other hand, by counsel for plaintiff: 1. "That the finding, that a part of the consideration for the contract was a promise by plaintiff to use all his influence to secure the election of defendant, was unwarranted by the pleadings, is wholly nugatory, and can not be considered by this court; that if the fact that plaintiff agreed to use his influence was a material fact, and rendered the agreement void, it should have been pleaded; that defendant should have alleged that such promise was made, and that by reason thereof, the entire contract was rendered void; 2. That the contract set out in the complaint, and the only one the court had power to find, is valid." For reasons that will subsequently appear, we think it unnecessary to decide whether or not, in fact, the findings of the court above stated and objected to by the plaintiff's counsel were

within the issues made by the pleadings. All of plaintiff's testimony showing the agreement and the consideration therefor is in the statement, and it is not said and can not be claimed, that there is no evidence to sustain the court in its findings. Plaintiff's testimony in chief was voluntarily given by him, and no objection was made, or could have been made, to any question asked upon his cross-examination. Keeping in mind these facts, we will first consider plaintiff's objection to the court's finding, and to a consideration of the same by this court.

It cannot be doubted at this day, nor is it denied, that a contract will not be enforced if it is against public policy, or that, if a part of the consideration of an entire contract is illegal as against public policy or sound morals, the whole contract is void. (*Garforth* v. *Fearon*, 1 H. Bl. 327; *Powers* v. *Skinner*, 34 Vt. 281; Story's Eq. Jur. vol. 1, secs. 296, 298; *Carlton* v. *Whitcher*, 5 N. H. 198; *McCausland* v. *Ralston*, 12 Nev. 212.) Nor does it matter that nothing improper or illegal was done, or was expected to be done, under the contract; the principle is controlled by the tendency of the contract. (*Powers* v. *Skinner*, *supra; Atcheson* v. *Mallon*, 43 N. Y. 149; *Richardson* v. *Crandall*, 48 Id. 362; *Clippinger* v. *Hepbaugh*, 5 Watts & S. 321; *Spence* v. *Harvey*, 22 Cal. 339.)

Courts refuse to assist either party to such contracts, and they refuse to hear such cases, in the interest of the public, not for the sake of plaintiff or defendant. (*Holman* v. *Johnson*, 1 Cowp. 343.) No principles are better settled than those above stated.

*Valentine* v. *Stewart*, 15 Cal. 389, was a suit in equity to compel a specific performance of a contract concerning lands. After the testimony was, in the court below, of its own motion, dismissed the case, on the ground that the agreement, or a part of it was in, violation of public policy.

In that case, counsel for appellent advanced the views that counsel for plaintiff do in this case. They said in their briefs: "But the court below founded its decree upon supposed facts nowhere alleged in the pleadings. This was clearly erroneous. A court of equity can not found its de-

cree upon a fact not alleged in the pleadings, however clearly it may be made out in evidence. * * * But it is contended * * * that whenever it appears to a court that a contract which is brought before it is against public policy, it will refuse to entertain any suit upon it. * * *

"It is true that when it so appears to the court the court will eject the cause ; but then, nothing appears to the court that is not on the record. But if it is meant to assert that a court will decide a contract to be *turpis contractus* when no fact is alleged upon the record which makes it so, there is no foundation for the assertion."

Counsel for respondent, in their brief, said : " The only question is, whether the fact appearing by evidence properly given under the issues raised by the pleadings, that the consideration was an immoral one, and the contract one which is against public policy, the court should refuse to enforce performance, where the objection is not specifically raised and made a ground of defense."

We have quoted from the briefs of the respective counsel for the purpose of showing that the point raised there was like the one urged by counsel for plaintiff in this case, and now being considered. In that case the contract set up in the bill was legal, but contemporaneously an illegal contract touching the same matter was executed by the same parties, which was decided to be against public policy, and void. The contract last named was not set out in the bill, but was disclosed by the proofs. The court said : "This is a case of more than ordinary importance, and presents features of peculiar interest: The plaintiffs file a bill for the specific execution of a certain agreement which they set out. Upon the pleadings and proof the district judge dismissed the bill upon the ground that the agreement, as disclosed in the proofs and the facts connected therewith, showed the contract sought to be enforced was in contravention of public policy and void, and that the court would refuse to execute it, though this defense was not specifically or otherwise set up in the pleadings."

After considering the nature of the cotemporaneous contract, and deciding that it was void for the reason men-

tioned, and that the contract which plaintiff was endeavoring to enforce was void also, for the reason that it was wholly or in part executed in consideration of the making of the void contract cotemporaneously made, the court further said: "No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. * * * The authorities and the reason of the rule leave no question as to the right of a court, and its duty, to dismiss from its consideration a case based upon a consideration which contravenes public policy. Courts do not sit to give effect to such illegal contracts. The law is not to be subsidized to overthrow itself, though the parties to the litigation may not object to such a meretricious exercise of power. If the public time and the authority of law were thus at the mercy of litigants, the sense of dignity and obligation to the laws, from which the court derives its powers, would constrain it to desist from the suicidal task of subverting the laws which it was organized to preserve and administer." (See, also, response to petition for rehearing in same case, and *Abbe* v. *Marr,* 14 Cal. 211; *Hatzfield* v. *Gulden,* 7 Watts, 154; *Holman* v. *Newland,* 1 Cowp. 341.)

We fully agree with the views expressed in the decision from which we have quoted so liberally. It is undoubtedly the general rule in law and equity that the findings must be warranted by the pleadings. So the cases cited by respondent hold. (42 Cal. 605; 41 Id. 284; 33 Id. 474.) But in neither of those cases was it claimed or held that the contract sued on was opposed to public policy. In neither was the public especially interested. Admitting that in such cases the court must base its findings upon the issues made by the pleadings, it does not follow that it must do so in cases where relief is denied, not for the sake of the defendant, but because it is for the public interest to refuse

to entertain the case. All the authorities hold that contracts against public policy should not be enforced, because it is for the public good to leave the parties where they have voluntarily placed themselves. In such cases the court must act for the public, if the defendant does not, and refuse to assist either, "if from the plaintiff's own stating or otherwise the cause of action appears to arise *ex turpi causa.*"

The court having found that a portion of the consideration of the contract on the part of plaintiff was that he should use all his influence to secure defendant's election (as it was its duty to do if the evidence justified such a finding), it then became its duty to dismiss the suit if such a contract was opposed to public policy. It becomes necessary, then, to ascertain the nature of such an agreement.

We shall first consider it as found by the court, including the portion objected to; and second, with that part excluded, or as it is alleged in the complaint.

It is hardly claimed by counsel for plaintiff that a contract like the one found by the court, a part of the consideration of which was an agreement by plaintiff to use all his influence to secure defendant's election, can be sustained or enforced. But it is urged, as before stated, that such a finding was nugatory, and cannot be considered by this court. Having arrived at an opposite conclusion upon that point, we shall content ourselves with a summary disposition of the question as to the validity of the contract found by the court. It is undoubtedly void, as contrary to public policy. It was in terms a promise to use not only personal effort, but personal influence, among the voters of Storey county to secure defendant's election. Its influence upon plaintiff was the same as though defendant had promised to give him a definite sum of money in case of election. Success would bring reward, while defeat would result, not only in loss of coveted profits, but time and labor as well. By it plaintiff's love of gain was stimulated, and a great temptation placed before him to promote his own interests regardless of public good. In *Gray* v. *Hook*, 4 Comst. 454, Hook agreed to withdraw his application for an office and

aid Gray in securing the appointment, in consideration of which Gray was to allow Hook one half of the fees and emoluments of the office as long as Gray held it.  The court said (p. 457):  "I think that this contract was void, because it stipulated that Hook should have a pecuniary compensation for withdrawing his application, by which he had probably driven off all competition and contributed to reduce the number of applicants to himself and Gray.  I have no doubt that it is void, because it is stipulated that Hook should have a pecuniary compensation for aiding Gray to obtain the appointment.  And I have no doubt that any agreement between two citizens by which one stipulates to pay the other a proportion of the fees and emoluments of a public office which he is seeking, in consideration that the other will aid him in obtaining it, is void."

In *Clippinger* v. *Hepbaugh*, 5 Watts & S. 315, it is said that "a contract to procure, or endeavor to procure, the passage of an act of the legislature by any sinister means, or even by using personal influence with members, is void, as being inconsistent with public policy and the integrity of our public institutions.  And any agreement for a contingent fee, to be paid on the passage of a legislative act, would be illegal and void, because it would be a strong incentive to the exercise of personal and sinister influences to effect the object."

*Mills* v. *Mills*, 40 New York, 543, was an action upon a contract to convey certain lands to plaintiff, the consideration of which was that plaintiff "should give all the aid in his power, spend such reasonable time as might be necessary, and generally use his influence and exertions to procure the passage into a law" of a certain bill.  The defendants put the principal allegations of the complaint in issue by their answers, and upon the hearing, the pleadings and agreement were read in evidence.  Defendants moved to dismiss, and the motion was granted upon the ground that the agreement was illegal and void.  Judgment was entered, and on appeal it was affirmed.

See also *Powers* v. *Skinner*, 34 Vt. 280; *Fuller* v. *Dane*,

18 Pick. 479, 481; *Wood* v. *McCann*, 6 Dana (Ky.), 369, 370; vol. 1 Story's Eq. Ju., sec. 293, b.; *Faurie* v. *Morin*, 4 Martin, 39; *Carlton* v. *Whitcher*, 5 N. H. 196; *Nicholls* v. *Mudgett*, 32 Vt. 546; *Marshall* v. *Baltimore and Ohio Railroad Co.*, 16 How. (U. S. R.), 333; *Haas* v. *Fenlon*, 8 Kan. 604; *Martin* v. *Wade*, 37 Cal. 174.

The tendency of a contract for a contingent reward, to use one's influence to secure another's election to a public office, is as certainly detrimental to the public interest as is a contract to use personal influence to procure the passage of a law, or to obtain a pardon.

This brings us to a consideration of the contract as stated in the complaint, stripped of the illegal promise just noticed.    And with the circumstances attending its making, it may be stated thus: A short time before the primary election, when plaintiff and defendant were partners in the practice of law, both being of the opinion that if defendant should be elected, their business, both civil and criminal, would be greatly increased, they agreed that defendant should run for the office of district attorney, and if elected, they should share, equally, the labors and profits; or, to state it in the language of counsel for plaintiff, they agreed that "if Drake was elected, Gaston was to aid him in the business of the office, for which services he was to receive one half of the fees," etc.    Was such a contract valid, or void, as against public policy?    What was its tendency, whether entered into by honest, or by designing and corrupt men?    We are referred by counsel for plaintiff to cases decided under statutes against buying and selling offices, wherein it is held that a principal holding an office may make a deputation, reserving a portion of the salary or fees to himself, and give the balance to his deputy for services. (*Mott* v. *Robbins*, 1 Hill, 21; *Becker* v. *Ten Eyck*, 6 Paige, 68; 7 Bac. Abr. 301.)    Also, that a sheriff may give to his deputy all the fees pertaining to the services he may render as such.    (*Printing Co.* v. *Sanborn*, 3 Minn. 418.)    But in all of those cases the deputation was made after the election of the principal, and therefore the appointment or

promise to appoint could not have had an influence upon his election.

We shall not discuss the question whether the contract now under consideration would have been valid or void if made after election. That is not our case. Plaintiff testified, among other things, that when defendant first spoke to him about running for the office, defendant said: " I think if you and I stand in for the office together, we have got friends enough to secure the nomination and election. I wish you would think it over till to-morrow, and if, on reflection, you are willing, we will stand in for it;" that plaintiff replied: " Mr. Drake, the idea strikes me favorably, and suppose I should come to a favorable conclusion, what effect is it going to have on our partnership ?" That defendant replied: " The only effect it would have, it will bring in more business, all the business we can attend to. * * * The salary is two thousand dollars per year, and five hundred dollars coming in every three months is no little item to be divided; and the salary and tax suits and the business of the criminal cases, together with the civil business that will naturally come to us, will build up a business that will amount to thousands of dollars per year." * * *

Plaintiff says he thought the matter over until the next morning, when he told defendant that he had come to a favorable conclusion; that he then said to defendant that he " had a great many old California friends that lived here, * * * and old Washoe friends, and he thought they would do anything honorable to advance his interests, irrespective of party principles;" that defendant then said to him: " If we go in for this office and I am to be a candidate, I shall want all my time from now till election." He says he gave him all his time and attended to the business himself; that he let defendant use all the money that they had on hand and all that came into the office, to use for his election. He further testified that he did use all his influence to secure defendant's election, and he stated the reason why he did so, although he said, at last, that there was no agreement that he should do so. The reason he gave why he used all his influence was, that he " supposed he was pro-

moting his own interests." Then, so far as plaintiff was concerned, the incentive that moved him was self-interest and not the general good; and, too, he was induced to do what he did do, by the fact that he was to share the profits, and that defendant's election would increase their business. So, in this case, at least, the tendency of the contract stated in the complaint was to induce plaintiff to use all his influence for defendant's election, even though he did not agree to do so, as found by the court. And such was its natural tendency. This arrangement may have induced him to influence ten men, or a hundred, to vote for defendant in opposition to preconceived political principles, and fixed ideas of right and duty; and, too, when they may have preferred his opponent as an incumbent of the office. Such a contract can not be upheld. Its tendency was to corrupt the people upon whose integrity and intelligence the safety of the state and nation depends—to lead voters to work for individual interests rather than the public welfare. In my opinion, in the majority of cases, men will work as industriously, under an agreement that they shall assist in performing the labors, and share in the profits, of an office, if another is elected, as they would if a promise to use all their influence should be subjoined. With most men, self-interest is among the strongest incentives to effort, and it requires no added promise to act as a stimulating influence.

In *Mood* v. *McCann, supra,* the court said: "There having been no plea or defense in the court below, the only clue to a decision of the case is furnished by the declaration and note as described in it; and had these shown that the fee, or any portion of it, depended on the passage of the legislative acts, or either of them, we should be clearly of the opinion that the contract should be deemed illegal and void; because a contingent fee is a direct and strong incentive to the exertion of not merely personal, but sinister, influence upon the legislature, and therefore public policy forbids the legal recognition of any such contracts, upon the same principle on which it interdicts wagers on elections and contracts for procuring pardons."

And in *Fuller* v. *Dame, supra,* it is said that "the law goes

further than merely to annul contracts where the obvious and avowed purpose is to do or cause the doing of unlawful acts; it avoids contracts and promises made with a view to place one under wrong influences—those which offer him a temptation to do that which may injuriously affect the rights and interests of third persons." See authorities before cited. If there are any contracts upon which courts should "put the stamp of their disapprobation," it is those curtailing or tending to curtail a free exercise of the elective franchise. The contract stated in the complaint, as well as that found by the court, were of that character, and neither can be upheld or enforced.

The judgment and order appealed from are therefore reversed, and the court below is directed to enter a judgment of dismissal, defendant to recover his costs.

BEATTY, C. J. concurring:

The evidence in this case did not, in my opinion, warrant the finding of the district court, to the effect that Gaston's promise to use his influence to procure Drake's election was a part of the consideration for the promise of the latter to divide the emoluments of the office. The parties were practicing law in partnership at the time when Drake asked Gaston's advice as to his becoming a candidate for the office of district attorney. Gaston first inquired what effect it would have on their partnership if Drake should be elected. The reply was, in substance, that it would have no other effect than to increase their business by the addition of the business and profits of the district attorney's office.

It was thus definitely settled that in the case of Drake's election their partnership should continue, and should embrace the fees and salary of the office before a word had been said about Gaston's helping him to win the election, and before it had even been decided that he should run. On the following day Gaston, having weighed the chances of success, advised Drake to come forward as a candidate, and promised his hearty support and assistance. He did assist him to the best of his ability, and frankly stated that

one motive for his doing so was his belief that he was thereby advancing his own interests.   This is the sum and substance of the testimony, and to my mind it completely fails to show that Drake promised to divide the profits of the office because Gaston promised to help him to get it.   What he did was to promise to divide the profits if Gaston would help him perform the duties of the office.   If this promise had been made after the election, instead of before the election, it would have been entirely free from any taint of illegality; and if it must be held void and incapable of enforcement, it is not because there is any evidence that Drake expressly bargained for Gaston's influence in aid of his election, but because, and only because, courts are bound to discountenance contracts of this character on account of their tendency to induce the exertion of improper influences upon the election of public officers.   Upon this point—the last discussed in the foregoing opinion—I concur in the conclusions and judgment of the court.   Upon the others I express no opinion.