EDNA LOU THEDFORD, Appellant, *v.* SHERIFF,
CLARK COUNTY, NEVADA, Respondent.

No. 6272

November 2, 1970                    476 P.2d 25

*Heaton & Spizzirri* and *James D. Santini,* of Las Vegas,
for Appellant.

*Harvey Dickerson,* Attorney General, *George E. Franklin,
Jr.,* District Attorney, and *Lorin D. Parraguirre,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, BATJER, J.:

After a preliminary examination the appellant was bound over to district court on an open charge of murder and on a charge of abortion. In her petition for a writ of habeas corpus the appellant contended that no reasonable or probable cause had been presented to support a belief that the offenses charged had been committed or that the appellant had committed them. The appellant further contended that the information as filed failed to give her adequate notice of the exact offense upon which she was being charged.

At the preliminary examination the following pertinent facts were presented: On October 29, 1969, the victim, Patricia Kohlman, was picked up at her home by Patricia Irene Eastley. They drove to the latter's home and arrived at approximately 5:20 p.m. At approximately 6:00 p.m., Patricia Ann Eastley, sister-in-law of Patricia Irene Eastley, arrived at the home of Patricia Irene. At some time between 6:30 p.m. and 7:00 p.m. the appellant, Edna Lou Thedford, arrived at the Eastley residence carrying a paper bag. Immediately thereafter, the appellant and the victim went into a bedroom of the residence. Neither Patricia Irene nor Patricia Ann saw the events which occurred in the bedroom. The appellant emerged once from the bedroom, made a phone call, and requested the use of a flashlight. After acquiring the flashlight she returned to the bedroom.

The appellant and decedent were alone in the bedroom for approximately ten to fifteen minutes. At the end of this time they left the bedroom and Patricia Kohlman requested Patricia Irene to drive the appellant to a location in North Las Vegas. As the appellant left the Eastley residence, she discarded in a trash container the paper bag she had carried into the bedroom.

Patricia Irene then drove the victim and the appellant to North Las Vegas, where the latter was let out and the two remaining occupants traveled toward the home of the victim.

As Patricia Irene and Patricia Kohlman were traveling

from North Las Vegas to the latter's home, Mrs. Kohlman began to vomit and she was in an unconscious state when they arrived at her home. While Patricia Irene drove the appellant and victim to their respective homes, Patricia Ann, who had remained at her sister-in-law's home, examined the paper bag discarded by the appellant. In the bag she found a paper enclosure with the words "knitting needle" thereon, and a sales slip for the item.

From Mrs. Kohlman's residence, Patricia Irene called Patricia Ann, who drove immediately to the Kohlman home. Upon her arrival, Patricia Ann, an x-ray technician, determined that the victim was unconscious but still alive, and while the police and an ambulance were being summoned she attempted mouth-to-mouth resuscitation. Patricia Ann then accompanied the victim to the hospital, and remained at the hospital until the victim died later that evening.

After the death of Patricia Kohlman, Patricia Ann returned to the home of Patricia Irene. In the bathroom she discovered a bottle of menthyl salicylate, commonly known as oil of wintergreen. Patricia Irene testified that she never kept this substance in her home.

At 10:00 a.m. on the following day, Dr. Thorne Jefferson Butler performed an autopsy upon the decedent, whom he had personally attended immediately prior to and at the time of her death. The autopsy revealed that the uterus of the victim was approximately 18 weeks pregnant and contained traces of menthyl salicylate as well as small puncture marks in the cervix. The doctor testified that menthyl salicylate was a substance foreign to the uterus and not normally present in it. He further testified that the puncture marks in the cervix were not normal in the pregnant uterus.

Dr. Butler stated that, in his opinion, the menthyl salicylate had entered the blood stream of the victim from the uterus causing pulmonary edema and death. (The lungs filled with blood and the victim literally drowned in her own blood.)

It is well established that a preliminary examination is not a trial. NRS 171.206[1]; Goldsmith v. Sheriff, 85 Nev. 295,

---

[1]NRS 171.206: "If from the evidence it appears to the magistrate that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the magistrate shall forthwith hold him to answer in the district court; otherwise the magistrate shall discharge him. The magistrate shall admit the defendant to bail as provided in this Title. After concluding the proceeding the magistrate shall transmit forthwith to the clerk of the district court all papers in the proceeding and any bail taken by him."

454 P.2d 86 (1969); State v. Holt, 47 Nev. 233, 219 P. 557 (1923); Overton v. State, 78 Nev. 198, 370 P.2d 677 (1962). Its purpose is not to determine guilt or innocence but to determine whether or not there is probable cause to believe that an offense has been committed and that the defendant has committed it. Maskaly v. State, 85 Nev. 111, 450 P.2d 790 (1969), and cases cited therein. Here there was introduced sufficient evidence of probable cause to justify the magistrate in binding the appellant over to the district court on an open murder charge and on a charge of abortion.

The appellant and the victim were alone for a period of time and shortly thereafter the victim died of a lethal dose of menthyl salicylate. See Miner v. Lamb, 86 Nev. 54, 464 P.2d 451 (1970). It was reasonable for the magistrate to infer from the evidence that the appellant purposely administered the lethal substance. It was also permissible for him to infer from the evidence that there was probable cause to believe that the menthyl salicylate was administered in a manner that would amount to murder.

The appellant claims that because there was no showing, by the state, at the preliminary examination, of malice expressed or implied, that the writ of habeas corpus should have been granted.

Malice as applied to murder does not necessarily import ill will toward the victim, but signifies general malignant recklessness of others' lives and safety or disregard of social duty. State v. Judge, 38 S.E.2d 715 (S.C. 1946); Chisley v. State, 95 A.2d 577 (Md. 1953).

It cannot be said from the facts adduced at the preliminary examination that malice was not shown, the presence of malice is a question of fact which bears directly on the guilt or innocence of a defendant and upon the degree of the crime charged. It is not a question to be determined by the magistrate at a preliminary examination—it is a question to be determined by the trier of fact at the trial of the case. State v. Acosta, 49 Nev. 184, 242 P. 316 (1926). Furthermore, it is not a question to be determined by the trial judge at the hearing upon a petition for a writ of habeas corpus, nor by this court on appeal. In State v. Fuchs, 78 Nev. 63, 368 P.2d 869 (1962), it was said: "Neither a preliminary hearing, nor a hearing upon a petition for a writ of habeas corpus is designed as a substitute for this function [a trial]."

We now consider the appellant's contention that she was not given proper notice of the crime charged in the information. It alleged that "[B]y and as a result of said felonious abortion or attempted abortion [the appellant] did kill and murder the said Patricia Kohlman, a human being." Furthermore, appearing in the heading of the information are the words: "Murder—Felony—NRS 200.010 and 200.070."

In Howard v. Sheriff, 83 Nev. 150, 425 P.2d 596 (1967), this court said: "An information charging murder without specifying the degree is sufficient to charge murder in the first degree. Statutes which provide different punishments for first and second degree murder do not create two separate and distinct crimes—murder in the first degree and murder in the second degree—which must be pleaded accordingly. It is permissible to simply charge murder and leave the degree to be stated by the jury. The words 'murder in the first degree' are a legal conclusion. The facts alleged in the indictment and proof of trial determine degree."

In Miner v. Lamb, supra, we said: "An open murder complaint charges murder in the first degree and all necessarily included offenses." See NRS 175.501. See also Parsons v. State, 74 Nev. 302, 329 P.2d 1070 (1958); State v. Oschoa, 49 Nev. 194, 242 P. 582 (1926).

Inasmuch as the appellant is deemed to have understood that an open charge of murder encompassed all lesser included offenses, she did in fact have adequate notice of the charge against her.

In further support of her claim that she did not have adequate notice of the exact offense upon which she was being charged, the appellant contends that she may not be held to answer on the charge of murder under NRS 200.070[2] as it was not alleged in the complaint. This contention is without merit. In Singleton v. Sheriff, 86 Nev. 590, 471 P.2d 247 (1970), this court quoted with approval, the following language from State v. Pansey, 61 Nev. 333, 128 P.2d 464 (1942): "[U]nder the provisions of section 10785 N.C.L., 1929 [now substantially NRS 200.260], accused may be held to answer for a

---

[2]NRS 200.070: "Involuntary manslaughter shall consist in the killing of a human being, without any intent so to do, in the commission of an unlawful act, or a lawful act which probably might produce such a consequence in an unlawful manner; but where such involuntary killing shall happen in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder."

public offense other than that charged in the complaint." See also Marcum v. Sheriff, 85 Nev. 175, 451 P.2d 845 (1969).

The order of the district court is affirmed and the matter is remanded for further proceedings.

COLLINS, C. J., ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.