JIMMY HARRELL KEYS, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 17923

December 29, 1988                                          766 P.2d 270

[2]THE HONORABLE DAVID ZENOFF, Senior Justice, participated in this appeal in the place of CHIEF JUSTICE E. M. GUNDERSON pursuant to this court's general order of assignment filed September 14, 1988.

*Morgan D. Harris,* Public Defender, *Victor John Austin,* Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *Alan J. Buttell,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

Appellant Keys appeals from three convictions, second degree murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon and aiming a firearm. The murder conviction and conviction for aiming a firearm are affirmed; the attempted murder conviction is reversed.

Keys shot a man, Coleman, in the chest and killed him. While fleeing the scene of the murder Keys encountered another man, Jones, whom he assaulted with the murder weapon. Keys pointed his handgun at Jones's torso and ordered Jones to drive him away. When Jones refused, Keys pulled the trigger twice, but the gun failed to fire, and Jones escaped.

### Second Degree Murder

Keys contends that there is insufficient evidence of malice to support a murder conviction. This is a clear case of murder with implied malice. "Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." NRS 200.020. "Malice aforethought may be inferred from the intentional use of a deadly weapon in a deadly and dangerous manner." Moser v. State, 91 Nev. 809, 812, 544 P.2d 424, 426 (1975).

Malice can be present in the absence of an express intent to kill and "as applied to murder does not necessarily import ill will toward the victim, but signifies general malignant recklessness of others' lives and safety or disregard of social duty." Thedford v. Sheriff, 86 Nev. 741, 744, 476 P.2d 25, 27 (1970). The case at hand is a classic case of implied malice in which the defendant's actions show malice in law, that is a malignant disregard and recklessness concerning the life and safety of another. Ample evidence was adduced at trial that Keys used the handgun in a deadly and dangerous manner. Moreover, two eyewitnesses to the shooting, Michael Moore and Billy Armstrong, testified that the killing did not appear to them to be accidental, and Michelle

Coleman testified that Keys threatened to kill Ronald Coleman before Keys actually shot him. The second degree murder conviction is unassailable and must stand.

*Attempted Murder*

Keys requested that the jury be instructed that one could not be convicted of attempted murder unless it were proven that he had the "intent specifically to kill" another person. It was error for the trial court to refuse to instruct the jury that the specific intent to kill is an essential element of the crime of attempted murder. *See* Ramos v. State, 95 Nev. 251, 592 P.2d 950 (1979) (reversible error to instruct jury that defendant can be found guilty of attempted murder absent proof of a specific intent to kill). The error was compounded by the district court's instructions to the jury on implied malice. Implied malice is malice inferred in law from the defendant's conduct rather than by proof of an actual intention to kill. The mens rea encompassed by implied malice has no application in a prosecution in which a specific intent to kill is a required element of the accused offense. An instruction on implied malice in relation to the crime of attempted murder is misleading to a jury.

The question of specific intent to kill as an element of attempted murder and an associated question relating to whether attempted murder may be divided into degrees, attempted murder in the first degree or second degree, present issues deserving of some explanation and discussion.

Courts in other jurisdictions have noted a certain degree of confusion on whether specific intent is an essential element of attempted murder. For example, in the case of People v. Kraft, 478 N.E.2d 1154, 1157 (Ill.App. 1 Dist. 1985), the court commented:

> Judging from the number of decisions addressing this issue, the proper jury instructions for attempted murder has served as a continuing source of confusion and uncertainty among members of the bar. All authorities agree that the crime of attempt is a specific intent crime and "an instruction must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown."

(Citations omitted.)

In the hope of allaying any confusion and uncertainty that might attend the subject of attempted murder in this jurisdiction we review and examine this area of the criminal law.

An attempt to commit a crime is punishable under Nevada law.

NRS 193.330 provides that an "act done with intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime." NRS 193.330. Keys is charged with attempted murder, that is, an act done with the intent to commit murder, such act tending but failing to accomplish the crime of murder. Intent to commit murder means the intent to kill someone with malice aforethought. Murder, by definition, is the "unlawful killing of a human being, with malice aforethought, either express or implied." NRS 200.010.

The mens rea requirement denoted by the term *express malice* is different from that of *implied malice*. Express malice, called malice in fact, is the deliberate intention to kill; implied malice, called malice in law, does not relate to a deliberate, intentional killing but is rather a mens rea inferred in law from the "circumstances of the killing." NRS 200.020. Proving express malice means proving a deliberate intention to kill; while proving implied malice means proving only the commission of wrongful acts from which, absent any proof of an actual intent to harm, the archaic but essential "abandoned and malignant heart" can be inferred in law.

Attempted murder can be committed only when the accused's acts are accompanied by *express malice,* malice in fact. One cannot *attempt* to kill another with implied malice because there "'is no such criminal offense as an attempt to achieve an unintended result.'" *Ramos,* 95 Nev. at 253, 592 P.2d at 951 (quoting People v. Viser, 343 N.E.2d 903, 910 (Ill. 1975)). An attempt, by nature, is a failure to accomplish what one *intended* to do. Attempt means to try; it means an effort to bring about a desired result. Thus one cannot *attempt* to be negligent or *attempt* to have the general malignant recklessness contemplated by the legal concept, "implied malice." One cannot be guilty of attempted murder by implied malice because implied malice does not encompass the essential specific intent to kill.

An attempt to kill with express malice is, on the other hand, completely consistent with the specific intent requirement of the crime of attempt. Express malice is the "deliberate intention unlawfully" to kill a human. NRS 200.020(1). Attempted murder, then, is the attempt to kill a person with express malice, or more completely defined: Attempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill. This is all there is to it. There is

no need for the prosecution to prove any additional elements, such as, say, premeditation and deliberation. There are no degrees of attempted murder. The penalty for attempted murder is imprisonment for not less than one year nor more than twenty years. NRS 193.330. Proof of added elements adds nothing to the offense, nothing to the penalty. Speaking of crimes of attempted murder in the first degree or attempted murder in the second degree makes no sense since the penalty remains the same, and the added statutory elements comprising first degree murder are simply redundant. As properly noted in Graves v. Young, 82 Nev. 433, 420 P.2d 618 (1966): "The crime attempt to commit murder is made a crime by statute. The words 'first degree' are mere surplusage. State v. Roderigas, 7 Nev. 328 (1872)."[1] *Graves,* 82 Nev. at 438, 420 P.2d at 620.

Keys asked for an instruction telling the jury that to prove attempted murder the state must prove the "intent specifically to kill another person." This instruction was, as stated, erroneously refused. Further, the given instruction on implied malice, particularly as it relates to unintentional "reckless disregard of consequences and social duty," although applicable to the murder charge, was necessarily misleading to the jury when it was considering the attempted murder charge. As stated in the *Kraft* case, the court's instructions " 'must make it clear that to convict for attempted murder nothing less than a criminal intent to kill must be shown.' " *Kraft,* 478 N.E.2d at 1157. Given the trial court's refusal of Keys's proffered instruction on specific intent

[1]We explain this in detail because the court and counsel speak in the record of attempted murder in the first and second degrees. We hold in this case that there is no such thing as attempted murder in the first or second degree. "[A]ttempted murder is a generic crime, the sole mental element of which is a purpose to cause the victim's death. There [is], therefore, no need to prove premeditation and deliberation. . . ." State v. Brown, 517 A.2d 831, 837 (N.H. 1986). Although this court has never expressly ruled on the question of whether there can be degrees of attempted murder, it has occasionally written acceptingly of attempted first and second degree murder; thus, the reference to these crimes appearing in the record of this case is quite understandable. In Graves v. State, 82 Nev. 137, 413 P.2d 503 (1966), *later appealed,* 84 Nev. 262, 439 P.2d 476 (1968), *cert. denied,* 393 U.S. 919 (1968), involving the same Mr. Graves who was appellant in *Graves v. Young,* cited above, this court apparently accepted the concept of a conviction of attempted murder in the first degree. *See also* Septer v. Warden, 91 Nev. 84, 530 P.2d 1390 (1975). In Wheby v. Warden, 95 Nev. 567, 598 P.2d 1152 (1979), this court wrote about a conviction for attempted murder in the second degree. No wonder, under these circumstances, that a degree of confusion persists on this point. We trust that, now, for the reasons expressed in the body of this opinion, the confusion will be set to rest. There are no degrees of attempted murder. To the extent that *Wheby* holds to the contrary, such holding is overruled.

and the misleading effect of the implied malice instructions given by the trial court, it was certainly not made clear to the jury that nothing less than a specific criminal intent to kill must be shown in order to establish the crime of attempted murder. Therefore, and under the direct authority of *Ramos,* we must reverse the attempted murder conviction.

Keys stands convicted of second degree murder with use of a deadly weapon and of aiming a firearm, for which crimes he has been sentenced to two consecutive twenty-five-year terms in the Nevada State Prison plus a concurrent six months in the Clark County Jail. If additional penalties are to be sought by the state for the attempted murder of Jones, Keys must be retried by a jury properly instructed on the law of attempted murder.

GUNDERSON, C. J., STEFFEN, YOUNG, and MOWBRAY, JJ., concur.