## CURTIS GUY, Appellant, v. THE STATE OF NEVADA, Respondent.

### No. 22269

September 3, 1992 839 P.2d 578

[Rehearing denied November 5, 1992]

*Cherry & Bailus,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, *Daniel M. Seaton,* Chief Deputy District Attorney, Clark County, for Respondent.

# OPINION

By the Court, MOWBRAY, C. J.:

## FACTS

On the evening of April 7, 1990, appellant Curtis Guy and his friend Larry Pendleton were cruising the streets of North Las Vegas in an automobile, intending to purchase cocaine. Appellant was driving. He pulled the car into the parking lot of a convenience store, where they encountered Ceasor Evans, with whom they had not been previously acquainted. Evans told Pendleton and appellant that he knew where they could buy cocaine. Evans entered the automobile, and the three men set off to make the purchase. En route, Evans agreed to lead appellant and Pendleton to his source in return for a portion of the drugs they would purchase.

At Evans' direction, appellant drove to an undisclosed location where they purchased cocaine. As they drove away after making the purchase, Evans asked appellant to pull to the side of the road so that Evans could urinate. Appellant stopped the car and Evans alighted from the rear door. The cocaine remained in the car. As Evans stood outside the car, appellant attempted to drive off so as to deprive Evans of his portion of the cocaine. Evans, however, grabbed onto the rear door frame on the passenger side as the car sped away. As appellant continued driving with Evans clinging to the door frame, Pendleton turned and shot Evans three times in the abdomen with a .25 caliber handgun. Evans fell from the car, and Pendleton and appellant drove off. Evans died later that evening.

Some two weeks later, after a high-speed automobile chase through the streets of North Las Vegas, appellant was charged with murder with the use of a deadly weapon.[1] The state gave notice of its intent to seek the death penalty.

At appellant's jury trial, the state's theory of the case was as follows: Appellant was guilty of first degree murder, either because he aided and abetted Pendleton in murdering Evans or because he and Pendleton conspired to commit a dangerous felony (robbery) and Evans was killed in the perpetration of this felony. At the conclusion of the trial, the jury found appellant guilty of first degree murder.

At the penalty phase of the trial, the state offered evidence of appellant's extensive criminal record, including crimes that

---

[1]Pendleton was also indicted for Evans' murder. Pursuant to a plea bargain, Pendleton was sentenced to life without the possibility of parole.

Pendleton and appellant, acting together, had committed near in time to the murder of Evans. On April 6, 1990, the day before they murdered Evans, Pendleton and appellant burglarized the Las Vegas home of Jennifer Courtney and, when she returned home during the course of the burglary, slashed her throat in an attempt to murder her. She survived and later testified at the penalty phase of appellant's trial. On April 11, 1990, Pendleton and appellant burglarized the home of Richard French while he lay asleep in his bed. Their search for valuables took Pendleton and appellant into the bedroom where French lay sleeping. Armed with handguns, appellant and Pendleton each shot French several times in the head. French miraculously survived, and he, too, testified at the penalty phase of appellant's trial.

At the conclusion of the penalty phase, the jury found that four aggravating circumstances had been established beyond a reasonable doubt. The jury did not, however, find any mitigating circumstances. Appellant received a sentence of death.

## DISCUSSION

### I. GUILT PHASE

#### A. Felony murder

To convict appellant under a felony murder theory, the state had to prove that Evans was murdered while being robbed by Pendleton and appellant. Appellant contends that the evidence does not support the jury's finding that he and Pendleton robbed Evans. We disagree.

NRS 200.380(1) defines robbery as follows:

> [T]he unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking, in either of which cases the degree of force is immaterial. If used merely as a means of escape, it does not constitute robbery. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

Appellant first argues Evans had no legal or proprietary interest in the drugs because the agreement that entitled him to a portion of the drugs was void and unenforceable. *See* Gaston v. Drake, 14

Nev. 175 (1879) (holding that a contract will not be enforced if it is against public policy or if it is for an illegal purpose). Appellant concludes that because Evans had no legal or proprietary interest in the drugs, there was no unlawful taking of personal property and therefore no robbery.

Appellant's argument fails. Admittedly, the agreement could not be enforced as a contract because of its illegal purpose; that does not mean, however, that the drugs could not be the subject of a robbery. The Supreme Court of California has declared that "by prohibiting possession of an item, the government does not license criminals to take it by force or stealth from other criminals." People v. Dillon, 668 P.2d 697, 704 n.5 (Cal. 1983). And in State v. Pokini, 367 P.2d 499 (1961), The Supreme Court of Hawaii specifically held that a thief could be robbed of stolen goods. In our view, these cases correctly characterize robbery as a crime against *possession,* and we believe that the deal Evans made with his killers gave him a possessory interest in the cocaine.

Appellant next argues that the evidence fails to demonstrate that he and Pendleton took the drugs either from Evans' person or in Evans' presence. According to appellant, the drugs remained in the automobile while Evans urinated just outside the open rear passenger-side door. Thus, concludes appellant, when he and Pendleton sped off in the automobile with the drugs (the "taking"), the drugs were taken neither from Evans' person nor in Evans' presence.

This argument lacks merit also. We have adopted a broad definition of "presence" with respect to robbery, stating that "'[a] thing is in the presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it.'" Robertson v. Sheriff, 93 Nev. 300, 302, 565 P.2d 647, 648 (1977) (quoting Commonwealth v. Homer, 127 N.E. 517, 520 (Mass. 1920)). Applying this definition, we upheld a trial court's determination that money in a cash register was taken from a bartender's presence even though the bartender, who was in the bathroom when the robbers entered the bar, remained in the bathroom during the robbery out of fear. *Id.* at 301-302, 565 P.2d at 647. We also agreed with the trial court's finding that the bartender was prevented by fear from retaining possession of the money in the register. *Id.* at 302, 565 P.2d at 648.

In light of *Robertson,* we conclude that the drugs were taken

from Evans' presence. Under the deal to purchase the drugs, Evans possessed a portion of the drugs he purchased. Even while Evans urinated outside the car, the drugs were within his view. Moreover, Evans could have retained possession of his portion if Pendleton had not shot him.

Finally, appellant argues that Pendleton's shooting of Evans was force "used merely as a means of escape." NRS 200.380(1). We disagree. The evidence indicates that the firearm was used to overcome Evans' resistance to the taking of the drugs; a use of force that satisfies the statutory definition of robbery. *See* NRS 200.380(1).

Where there is substantial evidence to support the jury's verdict, it will not be disturbed on appeal. Bolden v. State, 97 Nev. 71, 624 P.2d 20 (1981). In determining whether a jury verdict is supported by substantial evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Koza v. State, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). We hold that substantial evidence supports the jury's finding that appellant and Pendleton robbed Evans.

B. *Jury Instructions*

Appellant assigns error to several of the jury instructions given at the guilt phase of his trial. In reviewing these assignments of error, our task is to ensure that the instructions correctly stated existing law. *See* Barron v. State, 105 Nev. 767, 783 P.2d 444 (1989).

Appellant first challenges Jury Instruction No. 5, which defined malice aforethought:

> The condition of the mind described as malice aforethought may arise, not alone from anger, hatred, revenge or from particular ill will, spite or grudge toward the person killed, but may result from any unjustifiable or unlawful motive or purpose to injure another, which proceeds from a heart fatally bent on mischief or with reckless disregard of consequences and social duty . . . .

According to appellant, this language does not accurately reflect the law of this state. In addition, appellant contends that this language, when read in conjunction with Jury Instruction No. 6

(defining express and implied malice),[2] confused the jurors and incorrectly implied that malice was imputable to appellant merely because he was present when Pendleton shot Evans.

In Thedford v. Sheriff, 86 Nev. 741, 744, 476 P.2d 25, 27 (1970), this court held that malice, as applied to murder, "does not necessarily import ill will toward the victim, but signifies general malignant recklessness of others' lives and safety or disregard of social duty." This holding validates the language used in Jury Instruction No. 5.

Appellant's challenge to Jury Instruction No. 6 also lacks merit; for this instruction accurately informed the jury of the distinction between express malice and implied malice. *See* NRS 200.020; Keys v. State, 104 Nev. 736, 766 P.2d 270 (1988). Moreover, because appellant offers no evidence showing confusion on the part of the jury, his allegation is speculative.

Appellant next argues that the district court erred in giving Jury Instruction No. 25, which states:

> The flight of a person after the commission of a crime is not sufficient in itself to establish his guilt or the crimes charged, but is a fact which, if proved, may be considered by you in the light of all other proven facts in deciding the question of his guilt or innocence. Whether or not evidence of flight shows a consciousness of guilt of the crimes charged, and the significance to be attached to such a circumstance, are matters for your determination.

We agree that the trial court erred in giving the flight instruction. The purported "flight" occurred some thirteen days after Evans was killed and did not involve leaving the scene of the murder. Given appellant's criminal proclivities, there are numerous possibilities as to why he fled from the police on April 20, 1990. It is speculative to assert that he fled because of a consciousness of guilt and fear of arrest arising out of the killing of Evans. *See* Theriault v. State, 92 Nev. 185, 547 P.2d 668 (1976). It is equally plausible that he fled to avoid being caught with illicit drugs in his possession. Although we find error here, we con-

---

[2]Jury Instruction No. 6 states:

Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof.

Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.

clude that because of the overwhelming evidence of appellant's guilt, the error is harmless beyond a reasonable doubt. *See* Manning v. Warden, 99 Nev. 82, 659 P.2d 847 (1983).

Appellant next challenges Jury Instruction No. 30, which states:

> You are here to determine the guilt or innocence of the defendant from the evidence in the case. You are not called upon to return a verdict as to the guilt or innocence of any other person. So, if the evidence in the case convinces you beyond a reasonable doubt of the guilt of the defendant you should so find, even though you may believe one or more persons are also guilty.

According to appellant, this instruction tended to confuse the jury by leading it to "an erroneous conclusion that [appellant] was a moving party in causing the death of Evans and override [sic] any doubts the trier of fact may had [sic] as to [appellant's] knowledge of and/or participation in the events which led to Evans [sic] death."

We hold that the trial court did not err in giving Jury Instruction No. 30. In effect, this instruction admonishes the jury to ignore Pendleton's culpability when determining whether appellant is guilty as charged. Such an instruction was both appropriate and necessary.

### C. *Sufficiency of the indictment*

Appellant was charged in the murder of Evans by way of grand jury indictment which alleged in relevant part:

> Defendant CURTIS GUY and LARRY PENDLETON did, on or about April 7, 1990, then and there, without authority of law and with malice aforethought, wilfully and feloniously kill CEASOR EVANS, a human being, by LARRY PENDLETON shooting at and into the body of the said CEASOR EVANS with a deadly weapon, to wit: a firearm; Defendant CURTIS GUY aiding and abetting LARRY PENDLETON THROUGH counsel and encouragement by transporting Defendant and LARRY PENDLETON to and away from the crime scene and by being present before, during, and after the commission of said crime.

Appellant challenges the sufficiency of the indictment, arguing that the indictment fails to provide sufficient information as to the specific acts that constituted the aiding and abetting.

Appellant's contention lacks merit. In Barren v. State, 99 Nev. 661, 668, 669 P.2d 725, 729 (1983), we held:

> [W]here the prosecution seeks to establish a defendant's guilt on a theory of aiding and abetting, the indictment should specifically allege the defendant aided and abetted, and should provide additional information as to the specific acts constituting the means of the aiding and abetting so as to afford the defendant adequate notice to prepare his defense.

*See also* Ikie v. State, 107 Nev. 916, 823 P.2d 258 (1991). In our view, appellant's indictment satisfies the criteria set forth in *Barren.* The indictment expressly alleges that appellant aided and abetted the murder of Evans. And while the indictment may not be as factually specific as it could have been, this court, reasoning that an element of waiver is involved, applies a reduced standard of review where, as here, a defendant attacks an indictment for the first time on appeal. *Barren,* 99 Nev. at 669, 669 P.2d at 729-730.

## D. *Hearsay statements sought by appellant*

During the trial, appellant sought to elicit from one of the state's witnesses an out-of-court statement made by Pendleton. Appellant argued that the statement should be admitted under the co-conspirator exception to the hearsay rule. *See* NRS 51.035. The state objected, asserting that the statement constituted inadmissible hearsay. The trial court refused to admit the statement, and appellant contends that this refusal constitutes error.

Because Pendleton's statement was being offered *for,* not against, appellant, the co-conspirator exception does not apply. *See* Johnstone v. State, 93 Nev. 427, 566 P.2d 1130 (1977). Appellant concedes as much in his opening brief, but asserts that the statement was nevertheless admissible at trial under NRS 51.075, NRS 51.315, or NRS 51.345.[3] We disagree. At trial,

---

[3]NRS 51.075 provides in relevant part:

 1. A statement is not excluded by the hearsay rule if its nature and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness, even though he is available.

NRS 51.315 provides in relevant part:

 1. A statement is not excluded by the hearsay rule if:
 (a) Its nature and the special circumstances under which it was made offer strong assurances of accuracy; and
 (b) The declarant is unavailable as a witness.

NRS 51.345 provides in relevant part:

when appellant asked the state's witness to recount Pendleton's out-of-court statement, the state responded with a hearsay objection. At that point, the trial court excused the jury and invited the parties to present arguments concerning the admissibility of the statement. During this colloquy, the trial court asked appellant several times to provide the hearsay exception under which the statement could be admitted. Appellant offered only the co-conspirator exception which, as noted above, is inapplicable; he did not mention NRS 51.075, NRS 51.315, or NRS 51.345. Because appellant failed to present these hearsay exceptions at trial, the trial court had no opportunity to consider their merit. Consequently, we will not consider them for the first time on appeal. *See* Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 623 P.2d 981 (1981).

### E. *Prosecutorial misconduct*

In his appellate brief, appellant reproduces some four pages of the trial transcript from the state's rebuttal argument in the guilt phase of the trial. Appellant contends that the reproduced portion of the transcript is "illustrative, and not dispositive," of occasions "where the prosecutor made disparaging remarks of defense counsel" and "misstated evidence."

In Riley v. State, 107 Nev. 205, 808 P.2d 551 (1991), we held that it was inappropriate for a prosecutor to make disparaging remarks pertaining to defense counsel's ability to carry out the required functions of an attorney. In the case before the court, the prosecutor's statements are in no way similar to those condemned in *Riley*. Moreover, appellant never objected on this basis to any of the statements made by the prosecutor. Thus, we hold that the prosecutor's comments during the guilt phase of appellant's trial did not disparage defense counsel.

With respect to misstated evidence, it is clear that a prosecutor may not make statements unsupported by evidence produced at trial. Witherow v. State, 104 Nev. 721, 724, 765 P.2d 1153, 1155 (1988). Appellant objects to the prosecutor's factual assertion that Evans bought the cocaine on the night of the murder, arguing

---

1. A statement which at the time of its making:
 (b) So far tended to subject him to civil or criminal liability;
 . . . .
that a reasonable man in his position would not have made the statement unless he believed it to be true is not inadmissible under the hearsay rule if the declarant is unavailable as a witness. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

that the record contains no evidence supporting the assertion. In our view, however, the state established a factual basis for its assertion. In his statement to the police, appellant recounted that Evans knew where they could purchase cocaine on the night of April 7, 1990. From this the jury could reasonably infer that it was Evans who made the purchase, and therefore the prosecutor's assertion was not improper.

## II. PENALTY PHASE

A. *Aggravating circumstances*

NRS 200.033 enumerates those circumstances by which murder of the first degree may be aggravated. In the present case, the jury found four aggravating circumstances beyond a reasonable doubt, and appellant challenges the following two: (a) the murder was committed while the person was engaged in the commission of or an attempt to commit any robbery; and (b) the murder was committed by a person, for himself or another, to receive money or any other thing of monetary value. *See* NRS 200.033(4) and (6). According to appellant, there was no evidentiary basis for these two aggravating circumstances. We disagree. As noted above, the evidence shows that Evans was murdered while being robbed by Pendleton and appellant. The evidence also shows that they murdered Evans to obtain cocaine, which has monetary value.

B. *Testimony of Joy Mundy-Neal*

In the penalty phase of appellant's trial, Joy Mundy-Neal, an employee of the Nevada Department of Parole and Probation, testified for the state. Mundy-Neal had prepared the presentence reports on appellant for his previous convictions.[4] In her testimony, she commented both on offenses appellant had committed before the murder of Evans and on those he had committed after the murder. Mundy-Neal also recounted, over appellant's objection, statements made to her by appellant during two presentence investigation interviews. According to Mundy-Neal, appellant stated during those interviews that he supported himself by burglarizing an average of ten homes per week and that during December 1986, he and some cohorts burglarized approximately three homes per day. Appellant argues that the trial court committed prejudicial error by allowing her to testify about his statements. According to appellant, under NRS 176.156, these

---

[4]Mundy-Neal first prepared a presentence report on appellant in December 1990 after he was convicted of burglary. At the time of her testimony in this case, Mundy-Neal had prepared three such reports on appellant.

statements may only be used in sentencing appellant in the cases for which the corresponding presentence reports were prepared.[5] As a corollary, appellant submits that these statements may not be used during the penalty phase of a subsequent, unrelated trial.

Appellant's position here is untenable. Under NRS 175.552, the trial court has broad discretion on questions concerning admissibility of evidence at a penalty phase. Pellegrini v. State, 104 Nev. 625, 764 P.2d 484 (1988). Moreover, NRS 175.552 establishes broad parameters as to what constitutes admissible evidence at a penalty phase. For example, though the statements recounted by Mundy-Neal appear to be hearsay, NRS 175.552 specifically allows admission, at the penalty hearing, of hearsay evidence that relates to the character and record of the defendant. Rogers v. State, 101 Nev. 457, 705 P.2d 664 (1985), cert. denied, 476 U.S. 1130 (1986). It is also true that evidence of uncharged crimes may be admitted during the penalty hearing once any aggravating circumstance has been established beyond a reasonable doubt. Robins v. State, 106 Nev. 611, 798 P.2d 558 (1990), cert. denied, 111 S.Ct. 1608 (1991). Prior to Mundy-Neal's testimony, the state had established beyond a reasonable doubt the aggravating circumstance that appellant had committed the murder of Evans while appellant was under sentence of imprisonment.

C. *Allocution*

During the penalty phase, the parties and the court engaged in a lengthy discussion regarding the scope of appellant's right of allocution. The trial court ultimately allowed appellant to make an unsworn statement to the jury but limited the statement to "remorse, a request to have mercy and other matters that do not attempt to contradict the evidence in the case." Appellant contends that the district court erred in restricting his statement. According to appellant, he had a common law right to make an unsworn and unrestricted statement to the jury, and this statement may include comments concerning the crime charged and a denial

---

[5]NRS 176.156 states:

 1. The Court shall disclose to the district attorney, the counsel for the defendant and the defendant the factual content of the report of the presentence investigation and the recommendations of the department of parole and probation and afford an opportunity to each party to object to factual errors and comment on the recommendations.

 2. Except for the disclosures required by subsection 1, the report and its sources of information are confidential and must not be made part of any public record.

of guilt, even without having first taken the witness stand. Appellant's contention lacks merit.

In Homick v. State, 108 Nev. 127, 825 P.2d 600 (1992), we recognized that capital defendants in this state enjoy the common law right of allocution. We also, however, restricted this right, adopting and endorsing the decision of the New Jersey Supreme Court in State v. Zola, 548 A.2d 1022 (1988). In *Zola,* the court held that while a capital defendant is entitled to argue to the jury that she is "'an individual capable of feeling and expressing remorse and of demonstrating some measure of hope for the future,'" she may not dispute facts in issue, offer other facts to exculpate herself, or deny her guilt. *Id.* at 1046 (quoting Sullivan, *The Capital Defendant's Right to Make a Personal Plea for Mercy: Common Law Allocution and Constitutional Mitigation,* 15 N.M. L. Rev. 41, 41 (1985)). In the case before us, the trial court explicitly followed the holding of *Zola* in restricting appellant's allocution. Accordingly, we conclude that there was no error.

## D. *Jury Instructions*

Appellant next challenges the penalty phase jury instructions and the special verdict forms used by the jury for reporting its findings of aggravating and mitigating circumstances. The record discloses, however, that when the trial court specifically asked appellant if he had any objections to either the penalty phase jury instructions or the special verdict forms, he responded negatively. Consequently, we hold that these challenges were waived by appellant's failure to object at trial. *See* Williams v. State, 103 Nev. 106, 110-111, 734 P.2d 700, 703 (1987).

## E. *The Eighth Amendment*

The Eighth Amendment of the United States Constitution prohibits imposing the death penalty on a defendant who "does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." Enmund v. Florida, 458 U.S. 795, 798 (1982) (overturning death sentence for felony murder because there was no proof that defendant possessed the degree of culpability warranting the death penalty). In Tison v. Arizona, 481 U.S. 137, 158 (1987), the Supreme Court held that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." In Doleman v. State, 107 Nev. 409, 418, 812 P.2d 1287, 1292-1293 (1991), we synthesized *Enmund* and *Tison,* holding that "[t]o receive the death sentence, [a defendant] must have, himself, killed, attempted to kill, intended

that a killing take place, intended that lethal force be employed or participated in a felony while exhibiting a reckless indifference to human life.''

Here, the *Enmund* determination of culpability was not made by the jury. This determination, however, can be made at any point, and it need not be made by the jury. Cabana v. Bullock, 474 U.S. 376, 386-387 (1986). In *Doleman,* this court, while expressing a preference that the jury make the culpability determination based upon the trial evidence, declared ''we have no reservation'' about making the determination on appeal. *Doleman,* 107 Nev. at 418, 812 P.2d 1292. Thus, we turn to consider appellant's culpability in the murder of Evans.

In our view, the record amply demonstrates that appellant possessed the necessary degree of culpability. First, because Pendleton had used deadly force during a previous burglary committed by Pendleton and appellant (the burglary of Jennifer Courtney's home on April 6, 1990), and because appellant knew that Pendleton was carrying a gun the night Evans was murdered, we conclude that appellant was aware that Pendleton would use deadly force in robbing Evans. Moreover, because of this awareness, we believe that appellant possessed a reckless disregard for human life when he participated in the robbery of Evans. Further, appellant demonstrated a reckless disregard for human life by continuing to drive the automobile while Evans clung to the door frame. Finally, appellant's reckless disregard for human life is evidence by appellant's failure to attempt to foil Pendleton's shooting of Evans and by his failure, after the shooting, to stop and render aid to Evans.

F. *NRS 177.055(2)(d)*

Appellant contends that his death sentence is excessive given that Pendleton received a sentence of life without the possibility of parole. We disagree.

In 1985, our legislature amended NRS 177.055(2)(d) to abolish proportionality review by this court. Under the current statute, we review whether the death sentence is excessive considering only the crime and the defendant. Thus, because we no longer consider whether the death sentence imposed by the jury is disproportionate to the penalty imposed in similar cases in this state, the penalty imposed here on Pendleton is irrelevant.

In light of the four aggravating circumstances found by the

jury, the senseless nature of the murder, and appellant's significant history of criminal behavior, we conclude that the death sentence was not excessive.[6]

## G. *Prosecutorial misconduct*

Lastly, appellant alleges that the prosecutor made several improper and prejudicial comments during closing argument in the penalty phase. Appellant again.presents in his appellate brief a portion of the trial transcript containing the allegedly improper comments without referencing those specific statements he finds objectionable. And he again contends that "the foregoing is illustrative, and not dispositive," of "instances" where the prosecutor engaged in misconduct. According to appellant, these "instances" include misstating the evidence, attempting to place the jurors in the shoes of the victim, inflaming the passions of the jury, and making speculative predictions about possible rehabilitation. After examining the entire record, however, we are unable to locate any of these alleged "instances."

Although not cited by appellant, one of the prosecutor's statements was clearly improper. In concluding his closing argument, the prosecutor stated:

> Mr. Guy, you have created havoc on our streets. You have stolen from our homes. You have victimized Jennifer Courtney. You have victimized Richard French. You certainly have victimized Ceasor Evans. *Ladies and gentleman, and Mr. Curtis Guy, you, sir, deserve to die.*

(emphasis added). In Collier v. State, 101 Nev. 473, 480, 705 P.2d 1126, 1130 (1985), this court held to be prosecutorial misconduct the following statement:

> [Defense counsel] asks you to look at Gregory Allen Collier and to look him in the eye and tell him that you want to kill him, to tell him that you want to execute him.
> Ladies and gentlemen, I would not ask you to do that unless I could do that myself.
> [prosecutor turns and faces Collier]
> Gregory Allen Collier, you deserve to die.

While here the record does not indicate whether the prosecutor turned and faced appellant when telling him he deserved to die, this slight difference does not constitute a meaningful distinction.

---

[6]We further conclude that appellant's death sentence was not imposed under the influence of passion, prejudice, or any arbitrary factor. *See* NRS 177.055(2)(c).

Like the statement in *Collier,* the prosecutor's remark that appellant deserved death injected the prosecutor's personal beliefs into the argument and detracted from the "unprejudiced, impartial, and nonpartisan" role that a prosecuting attorney assumes in the courtroom. State v. Rodriquez, 31 Nev. 343, 346, 102 P. 863, 864 (1909). In both cases, the prosecutor, by invoking the authority of his supposedly greater experience and knowledge, invites undue jury reliance upon the conclusions he personally endorses. Tucker v. Kemp, 762 F.2d 1480, 1484-1485 (11th Cir. 1985) (en banc); United States v. Frascone, 747 F.2d 953, 957 (5th Cir. 1984). Thus, we conclude that the prosecutor's remark was egregiously improper. Nevertheless, in light of the several aggravating factors found by the jury, we conclude that this error is harmless beyond a reasonable doubt.

## CONCLUSION

We have examined the remaining assignments of error and conclude that they are without merit. Accordingly, for the reasons set forth above, we affirm appellant's judgment of conviction and sentence of death.

ROSE, STEFFEN and YOUNG, JJ., concur.

SPRINGER, J., dissenting:

The felony-murder conviction cannot stand unless Guy *robbed* his fellow-drug dealer, Evans. The drugs that are the subject of the supposed robbery never belonged to Evans; and, therefore, Evans could never have been robbed of the drugs. This case is, plainly and simply, a case of one drug dealer killing another. It was Pendleton and not Guy who heartlessly shot and killed Evans in cold blood.

It is very difficult to discover what really happened in this case because the principals to the episode did not testify. There is no evidence, certainly no evidence beyond a reasonable doubt, as to the events that preceded Pendleton's shooting Evans. The following is about the best that one can derive from the record as to what happened: Evans, the decedent, was without any money with which to buy drugs. Evans told Guy and Guy's friend, Pendleton, where they could go to buy some cocaine. For this information, Guy and Pendleton told Evans that they would give him "a portion of the drugs *they* [Guy and Pendleton] would purchase." (Majority Opinion at 773; emphasis added.)

The trio drove to the place where Evans told them that they could purchase drugs. It is possible, but not at all clear, that Evans made the actual purchase of the drugs; but if he did so, he

clearly did it as the agent of Guy and Pendleton, who had the wherewithal to make the buy. Evans delivered the cocaine to Pendleton and Guy and off they went in a car driven by Guy, with Evans harboring the hopeful expectation that he would be given a portion of the cocaine for his trouble in arranging for the purchase.

The ill-fated Evans got out of the car to relieve himself. When Guy started to drive off without him, Evans tried to gain entry back into the car by "clinging to the door frame." (*Id.*) For reasons known only to Pendleton, Pendleton shot Evans in the abdomen and killed him. Now, strangely, Guy, not Pendleton, is facing the lethal needle for shooting Evans. I do not understand how anyone can make a felony-murder out of these very poorly-established facts.

"The felony-murder rule simply stated is that any homicide, committed while perpetrating or attempting a felony, is first degree murder." Payne v. State, 81 Nev. 503, 505, 406 P.2d 922, 924 (1965). As I see it, Pendleton is clearly guilty of intentional, premeditated, first-degree murder. Guy committed neither homicide nor robbery. Neither Pendleton nor Guy did anything that even remotely approaches robbery. They possibly could be said to be guilty of "perpetrating" a breach of contract, that is refusal to abide by their promise to give Evans a promised reward; although it is not clear from the facts of this case that even this promise was made by Pendleton and Guy to Evans. Even if we were allowed to assume that Evans was trying to get back into the car in order to enforce his interest in the contraband that had supposedly been promised to him, then, at most, Pendleton's shooting of Evans was done in order to avoid Evans's attempt to claim some executory, undivided and completely unspecified interest in the cocaine. This certainly does not constitute *robbery*.[1]

Evans had no identifiable claim of any kind to the cocaine that was purchased by Pendleton and Guy. If he did, it is of a most vague and unenforceable nature, even if we put aside the illegality of such a transaction. Even if we were to say that Evans had an

---

[1]As far as I can see, the evidence does not establish just what Evans's claimed undivided interest in the cocaine might have been—assuming that this is why Evans was trying to get back into the car. Maybe Evans was claiming a full one-third interest; or maybe Evans was claiming only the right to a few crumbs for his trouble. We do not know what either Pendleton or Guy told Evans they were going to give him for the tip. Not only do we not know the reason why Evans was trying to get back into the car, we have no idea of the nature or extent of Evans's supposed claim against Pendleton and Guy. If Evans had indeed been *robbed,* we could not possibly know what the subject of the supposed robbery might be.

ownership interest or some other kind of right to immediate possession to a quantity of the contraband, there is still no possibility of making a robber out of either Guy or Pendleton. This is not a robbery and therefore not a "felony-murder"; so I would reverse Guy's conviction.