# IN THE SUPREME COURT OF THE STATE OF NEVADA

CURTIS GUY,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 65062

FILED

NOV 14 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

This is an appeal from a district court order denying appellant Curtis Guy's postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Kathleen E. Delaney, Judge. Guy's petition raised challenges to the guilt and penalty phases of his trial. The district court denied Guy's petition as procedurally barred without conducting an evidentiary hearing. Guy contends that the district court erred. We affirm the district court's order as it relates to the conviction but reverse as to the death sentence and remand for the district court to grant the petition in part and conduct a new penalty hearing.

Guy filed the petition on May 16, 2012, more than 19 years after remittitur issued from his direct appeal. *Guy v. State*, 108 Nev. 770, 839 P.2d 578 (1992). His petition was therefore untimely. *See* NRS 34.726 (1). The petition was also successive because Guy had litigated a prior postconviction petition, *Guy v. State*, Docket No. 50350 (Order of Affirmance, February 24, 2011), and it constituted an abuse of the writ to the extent that it raised new claims. *See* NRS 34.810(1)(b), (2). Thus, Guy's petition was procedurally barred. *See* NRS 34.726(1); NRS 34.810(1)(b); 34.810(3).

SUPREME COURT
OF
NEVADA

(O) 1947A

17-39198

*Guilt phase claims*

Guy argues that the district court erred by denying his claims relating to the guilt phase as procedurally barred because he demonstrated good cause and prejudice to excuse the procedural bars and actual innocence.[1]

*Brady v. Maryland*

Guy contends that he demonstrated good cause and prejudice to excuse the procedural bars because the State violated *Brady v. Maryland*, 373 U.S. 83 (1963). *See State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003) (discussing the three prongs of a valid *Brady* claim); *State v. Huebler*, 128 Nev. 192, 198, 275 P.3d 91, 95-96 (2012) (explaining that the good-cause-and-prejudice requirements parallel the second and third prongs of a Brady claim). Our review is de novo. *Huebler*, 128 Nev. at 198, 275 P.3d at 95-96. Assuming without deciding that the evidence in question constitutes favorable evidence in the State's exclusive possession, there is not a reasonable probability that the result of trial would have been different had the State disclosed it. *See Bennett*, 119 Nev. at 599, 81 P.3d at 8. We therefore conclude that the district court did not err by rejecting the *Brady* claim as good cause and prejudice to excuse the procedural bars.[2]

---

[1]Along with the claims addressed in this order, Guy raised several claims that were perfunctory, unsupported by cogent argument or legal authority, or unaccompanied by a sufficient explanation of good cause and prejudice. We decline to consider them. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 7 (1987); *Evans v. State*, 117 Nev. 609, 647, 28 P.3d 498, 523 (2001), *overruled on other grounds by Lisle v. State*, 131 Nev., Adv. Op. 39, 351 P.3d 725, 732 n.5 (2015).

[2]Guy's attempt to demonstrate good cause and prejudice based on a claim that the State solicited false testimony pursuant to *Napue v. Illinois*, 360 U.S. 264 (1959), fails for the same reason. *See Morris v. Ylst*, 447 F.3d

 

*Abandonment*

Relying on *Maples v. Thomas*, 565 U.S. 266, 283 (2012), Guy argues that he demonstrated good cause to excuse the procedural bars because postconviction counsel abandoned him during the first postconviction proceeding. We disagree. Although postconviction counsel engaged in unnecessary delay, she did not abandon Guy. *See Towery v. Ryan*, 673 F.3d 933, 942 (9th Cir. 2012) (finding no abandonment where, even assuming counsel may have performed deficiently, he "did not refuse to represent [petitioner] or renounce the attorney-client relationship"). We therefore conclude that the district court did not err by rejecting the abandonment claim as good cause to excuse the procedural bars.[3]

*Ineffective assistance of postconviction counsel*

Guy argues that he demonstrated good cause and prejudice to excuse the procedural bars because his first postconviction counsel provided ineffective assistance. Because Guy's first postconviction counsel was appointed pursuant to statutory mandate, NRS 34.820(1), he was entitled to the effective assistance of that counsel and a meritorious claim that postconviction counsel provided ineffective assistance may establish good cause under NRS 34.810(1)(b) and NRS 34.810(2). *See Crump v. Warden*, 113 Nev. 293, 934 P.2d 247 (1997). To prove ineffective assistance of postconviction counsel, a petitioner must demonstrate both deficient performance (that counsel's performance fell below an objective standard of reasonableness) and that counsel's performance prejudiced him in the prior

---

735, 743 (9th Cir. 2006) (recognizing that the *Brady* materiality standard applies to *Napue* violations).

[3]We reject Guy's argument that whether an attorney abandoned the client is a factual finding and therefore the district court was required to hold an evidentiary hearing.

 

habeas proceeding (that the outcome of that proceeding would have been different but for counsel's deficient performance). *Id.* at 304 & n.6, 934 P.2d at 254 & n.6 (indicating that test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to postconviction counsel). This court gives deference to the district court's factual findings but reviews the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

First, Guy contends that postconviction counsel should have argued that trial counsel lacked the necessary qualifications to try a capital case and had a conflict of interest. Guy fails to demonstrate deficient performance and prejudice. Postconviction counsel did argue that trial counsel was not qualified and presented witnesses to support the claim. Guy points to no authority indicating that a reasonable postconviction attorney would have done more. *See In re Reno*, 283 P.3d 1181, 1210-11 (Cal. 2012) (explaining that the court will not grant relief on claims "which reflect nothing more than the ability of present counsel with the benefit of hindsight, additional time and investigative services, and newly retained experts, to demonstrate that a different or better defense could have been mounted had . . . prior habeas corpus counsel had similar advantages" (internal quotation marks omitted)). He also points to no legal authority establishing that an actual conflict of interest exists where an attorney accepts a case because he needs money. We therefore conclude that the district court did not err by denying this claim without conducting an evidentiary hearing.

Second, Guy contends that postconviction counsel should have argued that trial counsel failed to present testimony from the person who actually shot the victim, Larry Pendleton. This contention is belied by the record; moreover, Guy did not demonstrate that Pendleton would have

 

agreed to testify or explain how his testimony would have changed the result at trial. We conclude that the district court did not err by denying this claim without conducting an evidentiary hearing.

Third, Guy contends that postconviction counsel should have argued that trial counsel failed to present evidence that Guy could not validly waive his right to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Guy fails to demonstrate that relief is warranted: he does not explain *Miranda*'s holding, the level of competence required to waive one's rights under *Miranda*, or how his alleged frontal lobe damage precluded him from validly waiving his rights. We therefore conclude that the district court did not err by denying this claim without conducting an evidentiary hearing.

Fourth, Guy contends that postconviction counsel should have argued that trial counsel failed to challenge a juror as biased. Guy fails to demonstrate deficient performance because he has not established that an objectively reasonable postconviction attorney would have investigated the juror. Guy also fails to demonstrate that the result of the postconviction proceeding would have been different had counsel raised this claim. We therefore conclude that the district court did not err by denying this claim without conducting an evidentiary hearing.

*Actual innocence*

Guy contends that the district court erred by denying his petition as procedurally barred because he is actually innocent of first-degree murder due to brain trauma. *See Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001) (recognizing that the district court may excuse a procedural bar if the petitioner demonstrates that failing to consider the petition would result in a fundamental miscarriage of justice). Guy does not address the relevant elements of first-degree murder or explain how his

alleged brain trauma negates those elements. His contention that he could not appreciate the consequences of pressing on the gas pedal is illogical; moreover, it suggests legal innocence rather than factual innocence. *See Mitchell v. State*, 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006). Guy also fails to demonstrate that no reasonable juror would have convicted him had this evidence been presented. *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537. We therefore conclude that the district court did not err by denying this claim without conducting an evidentiary hearing.

*Penalty phase claims*

Guy argues that the district court erred by denying his challenges to the death sentence, including his claim that he is ineligible for a death sentence under *Enmund v. Florida*, 458 U.S. 782 (1982), and *Tison v. Arizona*, 481 U.S. 137 (1987). Together, *Enmund* and *Tison* hold that a defendant found guilty of murder under a felony-murder theory may be sentenced to death only if he was a major participant in the felony and demonstrated reckless indifference to human life.[4] Guy argues that the facts do not satisfy *Enmund/Tison*. The State responds that Guy raised this claim on direct appeal and this court rejected it; therefore, the procedural bars and the law-of-the-case doctrine preclude reconsideration.

The procedural bars may be excused when a petitioner demonstrates that he is actually innocent of the death penalty, for example, where he is ineligible for the death penalty. *Pellegrini*, 117 Nev. at 887, 34

---

[4]The State offered several theories to support a first-degree murder conviction even though Guy did not personally shoot the victim: aiding and abetting, conspiracy, and felony murder. The jury returned a general verdict that did not specify which theory it had relied upon. We have previously recognized that sufficient evidence supported the theory of felony murder. *Guy v. State*, 108 Nev. 770, 774-76, 839 P.3d 578, 581-82 (1992). The other theories were not supported by sufficient evidence.

SUPREME COURT
OF
NEVADA

(O) 1947A

P.3d at 537. Similarly, this court can decline to apply the law-of-the-case doctrine if the prior decision was clearly wrong and would result in a manifest injustice if enforced. *Hsu v. Cty. of Clark*, 123 Nev. 625, 629-30, 173 P.3d 724, 728 (2007). As explained below, our prior decision rejecting this claim was clearly wrong. And because Guy therefore is not eligible for a death sentence, allowing our prior decision to stand would result in a manifest injustice. *See also Lisle v. State*, 131 Nev., Adv. Op. 39, 351 P.3d 725, 734 (2015) ("[A]n actual-innocence inquiry in Nevada must focus on the objective factors that make a defendant eligible for the death penalty, that is, the objective factors that narrow the class of defendants for whom death may be imposed."). We therefore conclude that reconsideration of our prior decision is appropriate under these limited circumstances.

Our prior decision was flawed in several important aspects. First, this court erroneously stated that Guy was eligible for death under *Tison* so long as he participated in the robbery. *Guy*, 108 Nev. at 783-84, 839 P.2d at 587 ("To receive the death sentence, a defendant must have, himself, killed, attempted to kill, intended that a killing take place, intended that lethal force be employed or *participated in a felony* while exhibiting a reckless indifference to human life." (alterations and quotation marks omitted and emphasis added)). But *Tison* requires that a defendant be a *major participant* in the underlying felony. This court did not fully consider whether Guy was a major participant in the robbery, and it is clear from the facts that he was not. The State presented no evidence that Guy planned the robbery, he displayed no weapons, and he was not responsible for the use or show of force described by the State.[5] Guy's conduct made

---

[5]Robbery is defined as "the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury." NRS 200.380(1).

him guilty of felony murder, but it does not satisfy the major participant requirement as described in *Tison*.

Second, when considering whether Guy's conduct demonstrated a reckless disregard for human life, this court put undue weight on the fact that Guy knew Pendleton was armed and dangerous but decided to initiate a robbery anyway. *Tison* explicitly rejected that logic, explaining that it "amounts to little more than a restatement of the felony-murder rule itself." 481 U.S. at 150-51; *see also Jackson v. State*, 575 So. 2d 181, 191 (Fla. 1991) ("Mere participation in a robbery that resulted in murder is not enough culpability to warrant the death penalty, even if the defendant anticipated that lethal force might be used."). Moreover, *Tison* focused on the "reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death." 481 U.S. at 157. The robbery Guy initiated involved driving away from the victim while he urinated outside of the car. This is very different from the defendants' roles in *Tison*, which included assembling a large arsenal of weapons, breaking their father out of jail, kidnapping a family of four, and watching as their father murdered the family. *Id.* at 139-41. Although this court mentioned other factors, such as Guy's decision to continue driving when the victim attempted to reenter the car and his failure to stop Pendleton from shooting the victim, it did not adequately recognize that the incident occurred in a matter of moments. The factors mentioned by this court might have carried more weight had the robbery involved extensive planning and an ample opportunity for Guy to withdraw from further nefarious acts, but they carry less weight under the circumstances. This court failed to appreciate these key distinctions.

Simply put, the facts did not demonstrate that Guy was a major participant in a felony or that he had a sufficiently reckless disregard for

SUPREME COURT
OF
NEVADA

(O) 1947A

human life. He therefore is not eligible for the death penalty and is entitled to a new penalty hearing.[6] Accordingly, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.[7]

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc:    Hon. Kathleen E. Delaney, District Judge
       Federal Public Defender/Central Dist. of CA.
       Joel M. Mann, Chtd.
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

---

[6]Because we conclude that Guy is entitled to relief as to the sentence, we need not address the remaining challenges to his sentence. We nonetheless are troubled by the allegations that trial counsel was confused as to the purposes of a capital trial's penalty phase and did not understand the factors that might have been relevant to the jury's deliberations, such as the disposition of Pendleton's case and the evidence of Guy's troubled childhood that has come to light now that the record is fully developed.

[7]The Honorables Michael Cherry, Chief Justice, and Michael L. Douglas, Justice, did not participate in the decision on this matter.